WEYETH HARDWARE & MANUFACTURING COMPANY, Appellant, *v.* JAMES–SPENCER–BATEMAN COMPANY et al., Respondents.

Constitutional Law—Corporations—Insolvency—Preferences
—Trust-Fund Doctrine—Dissolution.

1. Whether sections 7, 10, 18, article 12, Const., or either of them, is applicable to a corporation which was organized before the constitution went into effect, is not decided; but, if they are

applicable, neither one of them affects the power of an insolvent corporation to make preferences among its creditors. *Held* likewise as to sections 2-4, 6-9, c. 87, Sess. Laws 1896. Nor does section 3330, Comp. Laws 1888, affect the power of a corporation to prefer creditors.

2. There are no express statutory provisions in this state affecting preference by corporations.

3. An insolvent debtor, at common law, may assign a part or the whole of his property for the benefit of his creditors, and may prefer one creditor or class of creditors over others equally meritorious, provided the transaction be *bona fide;* and this rule is in force in this state, there being no statutory provisions to the contrary.

4. A corporation is an artificial person, acting in an individual capacity; and in this state, in the absence of insolvent laws and statutory restrictions, it has the same power to prefer creditors, who are not its officers or agents, by deed of assignment or otherwise, as a private debtor has, so long as its assets have not been taken into possession by a court of equity, in a proper proceeding, at the instance of a proper party.

5. A corporation in this state has the absolute dominion over and *jus disponendi* of its corporate property, and a person may deal with it, respecting such property, the same as with an individual owner, and without any greater danger of being held to have received property into his possession burdened with a direct trust or lien.

6. In this state, the assets of an insolvent corporation do not constitute a trust fund to be equally and ratably distributed among its creditors, but they do constitute such a fund in the sense that they cannot be appropriated for any purpose foreign to its legitimate business, or distributed among its officers or stockholders, until all its debts are paid.

7. The rule of the common law which permits insolvent debtors, whether individuals or corporations, to prefer creditors, is impregnable in this state, and cannot be overthrown, except by legislative enactment.

8. The mere transfer, by deed of assignment, of the corporate property of a corporation to a trustee, for the purpose of paying its debts, does not *per se* work a dissolution of the corporation.

(Decided Jan. 12, 1897.)

Appeal from the Third district court, Salt Lake county. Hon. M. L. Ritchie, *Judge.*

Action by the Weyeth Hardware and Manufacturing Company against the James-Spencer-Bateman Company and another to set aside a deed of assignment.

From a judgment of dismissal, plaintiff appeals. *Affirmed.*

*N. W. Sonnedecker,* for appellant.

*Young and Moyle,* for respondents.

No briefs were filed.

BARTCH, J.:

It appears from the complaint in this case that on the 27th day of June, 1896, the defendant James-Spencer-Bateman Company, by its board of directors regularly assembled, declared itself insolvent, and unable to further carry on the business for which it was incorporated, and by deed of assignment transferred all of its property, both real and personal, to the defendant George H. Horne, as assignee, in trust, for the purpose of paying the claims of its creditors. In the deed of assignment the claims of certain creditors are preferred over that of the plaintiff and those of other creditors, and required to be paid in the order of preference indicated. The deed also provides that, in case any balance shall remain in the hands of the assignee after all claims shall have been paid, then such balance shall be paid to the assignor. It is alleged that the assets of the concern amounted to over $18,800, and that the liabilities exceeded the assets by about $15,000. The prayer is that a receiver be appointed; that the deed of assignment be set aside; that the assets of the defendant corporation be declared a

trust fund for the payment of the creditors, including the plaintiff's claim, and costs; and that such relief be granted as may be just and equitable. To the complaint the defendants interposed separate demurrers, on the ground that there is a misjoinder of parties parties defendant, that several causes of action have been improperly united, and that the complaint does not state a cause of action. The demurrers were sustained, and, the plaintiff electing to stand by its complaint, the court entered judgment of dismissal, and for costs. From this judgment the plaintiff appealed.

The important question presented is whether an insolvent corporation in this state has power, in the disposition of its corporate property, to prefer, by deed of assignment, one creditor or class of creditors over other creditors whose claims are equally meritorious. The contention of appellant is that, under the laws of this state, when a corporation has become insolvent, and ceased to pursue the business for which it was incorporated, all its assets constitute a trust fund, to be equally and ratably distributed among all its creditors, and that a deed of assignment, in which it prefers some of its creditors over others, and conveys all its property to a trustee for the purpose of paying its creditors in the order of preference, is fraudulent and void. To sustain this position considerable stress is placed on the constitution and laws of the state, and the provisions referred to will be considered, because, if there is any constitutional or statutory provision which prohibits a corporation from making preferences among its creditors, then the contention of appellant must be sustained. A corporation is a mere creature of law, and has such powers only as are expressly granted by the state, or as are necessary to carry into effect the powers expressly granted. 2 Kent,

15 UTAH—8

Comm. 298. It therefore has no power to do any act foreign to the law of its creation.

The provisions of the constitution which it is claimed affect the question under consideration are contained in article 12, section 7 of which reads: "No corporation shall lease or alienate any franchise so as to relieve the franchise or property held thereunder from the liability of the lessor, or grantor or grantee contracted or incurred in operation, use or enjoyment of such franchises or any of its privileges." This section simply prohibits a corporation from leasing or alienating its franchise, so as to relieve the franchise or property from the liabilities of the lessor or grantor or grantee; but it does not prohibit any corporation from conveying its corporate property to a trustee for the purpose of subjecting it to such liabilities, and the defendant company, by conveying its corporate property expressly for the purpose of subjecting it to liabilities of the grantor, committed no act in contravention of this provision of the constitution. Section 10 reads: "No corporation shall engage in any business other than that expressly authorized in its charter, or articles of incorporation." This limits the business of every corporation to that authorized by the law of its creation, but the section contains no restrictions as to the mode of discharging liabilities which may be created in the conduct of the business which the corporation may lawfully transact. Section 18, the remaining one to which reference is made, merely provides for an individual liability of the stockholders of every corporation and joint-stock association for banking purposes, but contains no provisions relating to the manner in which a corporation should pay the claims of its creditors. Whether or not these provisions of the constitution are applicable to a corporation like the one at

bar, which was organized long before the constitution became the organic law of this state, it is not necessary, nor is it our purpose, to decide in this case; but, if it were conceded that they were applicable, it would be difficult to perceive in what respect they could affect the power of a corporation to make preferences among its creditors, if such power exists independent of the constitution.

The statutory provisions, with one exception, which are invoked in behalf of the appellant, may be found in chapter 87, Sess. Laws 1896. Section 2 provides how a corporation may be organized, and what shall be stated in the agreement of the incorporators, which they must enter into, and also prescribes how the agreement shall be executed. Section 3 provides when and with what officers the agreement shall be deposited for record after its execution. Section 4 refers to the qualification of officers, and prescribes that, before entering upon their duties, they must make oath "that they will discharge the duties of such office to the best of their judgment, and that they will not do nor consent to the doing of any matter or thing relating to the business of the corporation with intent to defraud any stockholder or creditor, or the public." The oath here required is pertinent and entirely proper, whether the corporation has power to prefer creditors or not. Under either theory of the law, fraud will vitiate the acts of officers. Section 6, among other things, refers to the powers of a corporation, and provides that it "shall have power to make contracts, to sue and be sued, to have a seal, which it may alter at its pleasure, to buy, use and sell, or dispose of personal property, to buy, use, sell or dispose of all such real estate as may be necessary for its general business and such as shall be necessary for the collection of its debts,

or judgments, or decrees in its favor." A fair interpretation of this section gives a corporation the same right of disposition of its corporate property as an individual has to dispose of its property. And such interpretation is in harmony with the provisions of the entire act, of which this section forms a part, as an examination will show; for nowhere is there manifest any intention on the part of the legislature to abridge the *jus disponendi* as to corporations. In the construction of statutes the intent of the legislature must prevail, and such intent may be gleaned from the context. Section 7, referred to, provides how the capital stock of a corporation may be increased or diminished, how its name may be altered and the number of its officers changed, and how corporations may consolidate. It has no bearing whatever on the question at issue. Section 8 provides a method for the dissolution of a corporation, and section 9, the remaining section under the act of 1896 referred to by counsel for the appellant, provides that, after dissolution, the corporate powers shall continue for certain purposes, specified. Whether or not these several provisions of the act of 1896 apply to corporations organized under the laws of the late territory of Utah, it is not necessary to decide in this case, because at the time of the organization of the defendant corporation the statutes contained substantially the same provisions, and because a careful scrutiny fails to reveal any prohibitory or restrictive provision, respecting preferential assignments by corporations, in any of the statutes in force then or now. Counsel for the appellant has also referred to section 3330, Comp. Laws 1888, which, among other things, provides that a receiver may be appointed, by the court in which an action is pending or has passed to judgment, "in the cases when a corporation has been dissolved, or is insol-

vent, or in imminent danger of insolvency, or has forfeited its corporate rights." This authorizes the appointment of a receiver when an action is pending or has passed to judgment; and, doubtless, after proceedings in equity have been instituted for such purposes, and the corporate property of a corporation has become subjected to the control of a court of equity, the corporation has no longer any power to make an assignment of such property. But such is not the case here. There is no contention that chancery proceedings had been instituted when the assignment in this case was made.

It is clear, beyond reasonable controversy, that neither the organic nor the statutory laws of this state prohibit an insolvent corporation from preferring one creditor over another by deed of assignment. Nor is there any express constitutional or statutory grant of such power in this state. In the absence of such prohibition and grant, it becomes necessary to determine whether or not such power exists by referring to the law as stated by text writers and declared by judicial decision. The question under consideration has frequently arisen in courts with the result of some conflict of authorities, and that the law places artificial and natural persons on the same footing, in regard to assignments for the benefit of creditors, has been denied in numerous cases. That a solvent debtor, whether an individual or a corporation, can make an assignment of his or its property for the payment of his or its debts, has never been denied, either in England or in this country. Indeed, it would be impossible to predicate fraud on such an assignment, because this would be to deny a debtor the right to do what the law enjoins upon him as a duty,—the right to pay his just debts. In the performance of an act which the law and justice require to be done, no question of fraud can

arise, and hence such an act cannot become the subject of controversy in a court of justice. It is only in cases where the debtor has become insolvent, and unable to pay all his debts, that a court of equity may be resorted to for the purpose of determining whether or not fraud has been perpetrated upon any of the creditors, by deed of assignment or otherwise; and, in a case of this character, there is at this day no doubt that, if the debtor be a private person, he may make an assignment of all his property and prefer creditors. Such is the rule at common law; and, in all cases not affected by insolvent or bankrupt laws, or by statutory restrictions, the debtor may make such preferences as he pleases, provided the transaction be *bona fide*. While the existence of the rule has been deplored, and its policy doubted by some eminent jurists, still it has become so firmly established in our system of jurisprudence that it cannot now be overthrown by judicial decision. Chancellor Kent said: "As we have no bankrupt system, the right of the insolvent to select one creditor, and to exclude another, is applied to every case, and the consequences of such partial payments are extensively felt and deeply deplored. Creditors out of view, and who reside abroad or at a distance, are usually neglected. This checks confidence in dealing, and hurts the credit and character of the country. These partial assignments are, no doubt, founded, in certain cases, upon meritorious considerations; yet the temptation leads strongly to abuse, and to the indulgence of improper motives." *Riggs* v. *Murray,* 2 Johns. Ch. 565.

The justness of these criticisms of the rule, made by that eminent jurist, can hardly be controverted; for, while there are doubtless cases where preferences are meritorious, and are called for by considerations of grati-

tude and benevolence, there are also cases, as experience has shown, where the preferences have been given to creditors who lent but a delusive credit, under a well-grounded confidence that, in case of failure, they would have perfect indemnity in priority of payment. It frequently happens that the preferred creditor is the one who has been the means of decoying the real business creditor, who, in honest confidence, parted with his money and property, and of making him the victim. Sometimes, in order to prevent a disturbance, the influential creditor may be preferred, while the absent, or poor, or the one who has not the means or inclination to engage in litigation, is left without any protection, and with no possibility of recovering what is justly due him. While, however, the rule is susceptible of abuse, and capable of being used as an instrument to perpetrate fraud, and while its policy may be questioned, still its legality cannot be doubted. The rule is absolute and impregnable, except by legislative enactment. In the absence of statutory restrictions, an insolvent individual debtor may assign all his property for the payment of the claims of one creditor or class of creditors, to the exclusion of all others, and the principle upon which he makes distribution is immaterial, provided the whole of his property be assigned for the payment of his just liabilities, and the assignment be not made for the purpose of placing his property beyond the reach of his creditors, or for the benefit of the insolvent himself. If the assignment be made for the sole purpose of the payment of the just debts of the assignor, neither law nor equity will inquire what motives or reasons actuated preferences; but, if the assignor departs from an unequivocal devotion of his property to the payment of his debts, the assignment will be viewed with distrust. Whether the right to prefer was originally sus-

tained in part upon the supposition that, in most cases, proper and just grounds for preference did exist, and ought to be duly regarded by the debtor, or whether the rule was founded on the absolute dominion and ownership which every person has over his property, is not now necessary to inquire, because the right exists. Mr. Justice Sutherland, in *Grover* v. *Wakeman*, 11 Wend. 187, said: "It is now too late to agitate the question whether those assignments, either partial or general, are sustained by considerations of true wisdom and policy. Reflecting men have differed upon that subject, but the better opinion seems to be that, in the absence of a general bankrupt system, the interests of a commercial community require that they should be sustained." This doctrine having become a part of our system of laws, all that the courts are now required to do is to see that these assignments fairly appropriate all of the insolvent's property or that portion which he assigns, to the payment of his just debts. Such is the settled law as to assignments, both in England and in this country, except where affected by insolvent or bankrupt laws; and, in order that a creditor may succeed in having such an assignment declared void, he must not only show that it hinders and delays creditors in the collection of their claims, but he must also show, by proper averment and proof, that it is fraudulent. *Small* v. *Oudley*, 2 P. Wms. 427; *Pickstock* v. *Lyster*, 3 Maule & S. 371; *Halsey* v. *Fairbanks*, 4 Mason 206; *Cock* v. *Goodfellow*, 10 Mod. 489; *Meux* v. *Howell*, 4 East 1; *Murray* v. *Riggs*, 15 Johns. 571; *Mackie* v. *Cairns*, 5 Cow. 547; *McMenomy* v. *Ferrers*, 3 Johns. 71; *Hatch* v. *Smith*, 5 Mass. 42; *Livingston* v. *Bell*, 3 Watts 198; *Hower* v. *Geesaman*, 17 Serg. & R. 251; *Hastings* v. *Baldwin*, 17 Mass. 551; *Brashear* v. *West*, 7 Pet. 608; *Gould* v. *Railway Co.*, 52 Fed. 680.

A private person thus having the right, at common law, to assign all his property for the payment of his debts, and to prefer one or more creditors over others, it becomes important to inquire into the nature and powers of corporations, to ascertain whether or not they have the same right. A corporation is defined by Bouvier as "a body, consisting of one or more natural persons, established by law, usually for some specific purpose, and continued by a succession of members." It is an aggregation of individuals, so united by operation of law as to form but one person,—artificial, invisible, intangible, it is true, but nevertheless a distinct entity, and endowed with the power of succession. It possesses the property of legal immortality, and this constitutes its principal utility, because its existence may thereby be prolonged beyond the term of a natural life, and its rights and immunities preserved, which otherwise, upon the death of an individual, would become lost and extinct. As one person, those composing the corporation have but one will, and this is collected by the sense of a majority of the individuals. This will, so collected, directs and controls as absolutely as does the will of a private person. The individual is a person endowed with attributes through the creator of all things. A corporation is a person with attributes conferred upon it by law. Sir William Blackstone, in his Commentaries on the Laws of England (1 Bl. Comm. 123), says: "Persons, also, are divided by the law into either natural persons or artificial. Natural persons are such as the God of nature formed us. Artificial are such as are created by human laws for the purposes of society and government, which are called 'corporations' or 'bodies politic.'" The natural person has such powers and rights as are conferred upon him by nature, except as restricted by human laws for

the good of society. The artificial person, or corporation, has such powers and rights as are conferred upon it by the law of its creation, and such as are incidental and necessary to its corporate existence. Both the natural and artificial personages act in an individual capacity. Among the most important attributes of a natural person are his absolute dominion over his property and his right of disposition, and the same may be said of a corporation aggregate as to its corporate property. It has the right to contract and be contracted with, to sue and be sued, to implead and be impleaded, the same as a natural person; and it has the right to do all other acts in regard to its property that a natural person may do in regard to his. 1 Bl. Comm. 475. Through its agents it can purchase and alienate property, as provided by its charter, for the purposes and objects of its creation; and a person can deal with it, respecting its corporate property, the same as with an individual owner, and without any more danger of being held to have received property into his possession burdened with a direct trust or lien. Being, then, a creature of statute, and having conferred upon it its individuality by law, which has endowed it with a legal existence, independent of that of all its members, and having the same dominion over its property, with the same right of disposition as a private person has over his, it would seem, upon principle, that a corporation would have the same right to dispose of its corporate property by deed of assignment as a private person has to dispose of his by such deed. It is true that a corporation must transact all its business through agents, while an individual may transact his through agents or not, as he pleases; but this difference affects no right or title in property. The title of the corporation to its property is as absolute as that of an individual is to his, and as to

its individuality a corporation stands on an equal footing with an individual. Why, then, in the absence of bankrupt and insolvent laws, deny to a corporation the equal benefit of the rule of the common law respecting insolvent debtors? Where the same individuality and the same dominion over property exists, there, upon principle, the same right of disposition ought to exist. The reason of the rule applies with as much force in the one case as in the other. Nor has such reason, whether sound or not, ceased to exist; for it is just the same now as it was from time immemorial, and therefore the principle, *"Cessante ratione legis, cessat et lex ipsa,"* does not apply. But, if it did, it would apply in the case of a corporation with no greater force than in that of an individual debtor. So the fact that the rule is subject to abuse, and may become an instrument of fraud, is no more potent in the one case than in the other. Likewise as to the reasons which may be urged against the soundness of the rule. While a corporation can only act through its agents or officers, who act in a fiduciary capacity respecting its property which they hold in their hands, and are liable for fraud in respect to it, and sometimes for mere mismanagement, still the corporation is simply a debtor, as between itself and its creditors, and it holds its property subject to a lien in favor of the latter, or in trust, in no other sense than does an individual debtor. This is, doubtless, the general rule, and there appears to be nothing in the case at bar which makes it an exception thereto. There was no preference given to any of the officers or agents of the corporation. It is simply an assignment of all of the debtor's property for the payment of just debts. This being so, neither the insolvency of the defendant corporation nor the execution of the deed of assignment with preferences had the effect of charging the

property of the insolvent corporation with a direct trust in favor of the appellant, or of giving a simple contract creditor like the appellant a lien thereon.

The doctrine that an insolvent corporation may make an assignment of all its property for the purpose of paying its just debts, and prefer one creditor or class of creditors over others, the same as it might do if it were a natural, instead of an artificial, person, when none of its officers or agents are preferred, must, in the absence of charter and statutory provision to the contrary, be regarded as the settled law of this country, and, like the rule in the case of an individual debtor, has been so thoroughly incorporated in our system of jurisprudence that it cannot be overthrown, except by legislative enactment. It appears that the earliest case in which this question was raised in this country was that of *Catlin* v. *Bank*, 6 Conn. 233, where it was decided in the affirmative, in 1826, by the supreme court of errors of Connecticut. In that case the right to prefer had been exercised by the bank in favor of a particular creditor, and it was attempted to establish a distinction between the creditor of an insolvent corporation and that of an individual respecting the right of alienation in general, and it was contended that when a corporation became insolvent its officers or agents became trustees for the creditors, and that the creditors were entitled to be paid out of the trust fund equally and ratably. These propositions were overruled, the court maintaining that no distinction respecting the general power of disposition of their property existed between a corporation and an individual. Mr. Chief Justice Hosmer, delivering the opinion of the court, said: "Where no legal lien has been obtained, it is a reasonable supposition that the relation of creditor and debtor must in all cases infer the same consequences, and

that where the same mischief exists there is the same law. The cases of an individual and of a corporation in the matter under discussion, it appears to me, are not merely analogous, but identical; and I discern no reason for the slightest difference between them. There exists no doubt that there have been many instances of actually insolvent corporations where certain creditors have been preferred to others; and the perfect silence, until now, on the subject of this fancied diversity, is powerful to show what has been the universal opinion." The same doctrine was also sanctioned, in 1834, by the court of appeals of Maryland (*State* v. *President, etc., of Bank of Maryland*, 6 Gill & J. 205), where it was held that an individual debtor in failing circumstances might prefer one creditor over another by a transfer of his property made in good faith, and that a corporation might do the same. Mr. Chief Justice Buchanan, speaking for the court, observes: "No satisfactory reason has been advanced, and none is perceived, why a corporation in failing circumstances, unless restrained by some express provision in the charter of incorporation, which is not the case here, may not assign its property to trustees, for the benefit of either preferred creditors or of all its creditors equally, as well as an individual in insolvent circumstances; the same relation of debtor and creditor subsisting in one case as in the other." So, in Pennsylvania, in 1843, it was expressly held by the supreme court of that state, in *Dana* v. *Bank*, 5 Watts & S. 223, that a bank or other corporation had the power to make an assignment for the benefit of preferred creditors. Mr. Justice Kennedy, delivering the opinion of the court, said: "In this case, although there are some restrictions placed on the bank by the act establishing it, yet it cannot be pretended, or, at most, cannot be shown, that the bank, or

its president and directors, are either expressly or impliedly restrained from giving, directly or indirectly, preferences to some of its creditors over others; and, not being restrained in this respect by this or any other act, it must be deemed to have the same power to make a distinction between its creditors, and to give preferences to some of them over others, that any natural person has."

This doctrine has since been maintained by the decided weight of judicial decisions, but few cases comparatively having denied to insolvent corporations the same right to prefer which an insolvent individual has. Generally corporations have been held to have the same dominion over corporate property, the same interest therein, and the same right of disposition thereof, as an individual has concerning his property. In *Graham* v. *Railroad Co.*, 102 U. S. 148, Mr. Justice Bradley, delivering the opinion of the court, said: "It is contended, however, by the appellant, that a corporation debtor does not stand on the same footing as an individual debtor; that, while the latter has supreme dominion over his own property, a corporation is a mere trustee, holding its property for the benefit of its stockholders and creditors; and that, if it fail to pursue its rights against third persons, whether arising out of fraud or otherwise, it is a breach of trust, and creditors may come into equity to compel an enforcement of the corporate duty. This, as we understand, is the substance of the position taken. We do not concur in this view. It is at war with the notions which we derive from the English law with regard to the nature of corporate bodies. A corporation is a distinct entity. Its affairs are necessarily managed by officers and agents, it is true; but in law it is as distinct a being as an individual is, and is entitled to hold property (if not contrary to its charter) as absolutely as an individual can hold it. Its

estate is the same; its interest is the same; its possession is the same." In *Gould* v. *Railway Co.*, 52 Fed. 680, it is said: "A good many courts have from time to time inveighed against the rule of the common law which allows a debtor to make preferences among his creditors, but the rule is too firmly imbedded in our system of jurisprudence to be overthrown by judicial decision, and it can no more be overthrown by the courts in its application to corporations than to individuals." The supreme court of Illinois, in *Reichwald* v. *Hotel Co.*, 106 Ill. 439, speaking through Mr. Justice Sheldon, observes: "An individual may turn out part or the whole of his property in payment of his debts, and in so doing may prefer creditors. We do not see why this corporation might not do the same, and that through the action of its board of directors." So, in *Wilkinson* v. *Bauerle*, 41 N. J. Eq. 635, it was said: "Both reason and authority establish the proposition that a corporation may sell and transfer its property, and may prefer its creditors, unless such conduct is prohibited by law." In *Bank of Montreal* v. *J. E. Potts Salt & Lumber Co.*, 90 Mich. 345, the same doctrine is maintained by Mr. Justice Montgomery, who, in the course of an opinion concurred in by the other justices, says: "The rule in this state has, we think, been established, since the case of *Town* v. *Bank*, 2 Doug. (Mich.) 530, that a corporation may, in the absence of legislative restriction, deal with its property precisely as an individual may, and may prefer one creditor over another, and hence that the assets do not become a trust-fund, for pro rata distribution among all its creditors, until such time as steps are taken under the winding-up act." 2 Kent., Comm. 281, 315, and note g; Burrill, Assignm. (6th Ed.) § 45; 2 Cook, Stock, Stockh. & Corp. Law, § 691; 2 Mor. Priv. Corp. § 802; Ang. & A. Corp. pp. 155, 156; *Hollins* v. *Iron Co.*,

150 U. S. 371; *Steel Co.* v. *O'Donnell*, 156 Ill. 624; *Ahl* v. *Rhoads*, 84 Pa. St. 319; *Coats* v. *Donnell*, 94 N. Y. 168; *Sargent* v. *Webster*, (Mass.) 13 Metc. 497; *Pairpoint Manuf'g Co.* v. *Philadelphia Optical & Watch Co.*, 161 Pa. St. 17; *Smith* v. *Skeary*, 47 Conn. 47; *Ex parte Conway*, 4 Ark. 302; *Warner* v. *Mower*, 11 Vt. 385; *Dabney, Morgan & Co.* v. *Bank of State of South Carolina*, 3 S. C. 124; *Pyles* v. *Furniture Co.*, (W. Va.) 2 S. E. 909; *Hopkins* v. *Turnpike Co.*, 4 Humph. 403; *Rollins* v. *Carriage Co.*, (Iowa) 45 N. W. 1037; *Blalock* v. *Manufacturing Co.*, (N. C.) 14 S. E. 501; *Ringo* v. *Bisco*, 13 Ark. 563; *Arthur* v. *Bank*, 9 Smedes & M. 394; *Allis* v. *Jones*, 45 Fed. 148; *Schroeder* v. *Mason*, 25 Mo. App. 190; *Haxtum* v. *Bishop*, 3 Wend. 13; *Bank* v. *Whittle*, 78 Va. 737; *People* v. *President, etc., of College of California*, 38 Cal. 166; *Breene* v. *Bank*, 11 Colo. 97; *Lyons–Thomas Hardware Co.* v. *Perry Stove Manuf'g Co.*, (Tex. Sup.) 22 Lawy. Rep. Ann. 802, note; *Lippincott* v. *Carriage Co.*, 25 Fed. 577; *Conover* v. *Hull*, (Wash.) 45 Am. St. Rep. 826, note; s. c. 39 Pac. 166; *Pyles* v. *Furniture Co.*, 30 W. Va. 123; *Paper Co.* v. *Robbins*, 151 Ill. 588; *Revere* v. *Copper Co.*, 15 Pick. 351.

Counsel for the appellant, however, insists that, when a corporation has become insolvent, and ceased to carry on its business, its property and assets constitute a trust fund for the equal benefit of all its corporate creditors, and that the directors become trustees for all the creditors, and hence have no power to make preferences among them. It is true that courts of high character have made the general statement that the assets of an insolvent corporation constitute a trust fund for the benefit of its creditors, and in a few of the states the courts have based their decisions upon these general statements, and reasoned thence that managers or directors of an insolvent corporation had no power to dispose

of the corporate property by deed of assignment with preferences, or otherwise than for the equal benefit of all the creditors by a pro rata distribution among them. We are not aware, however, that any of the courts, using the general statement above referred to, have ever declared that the assets of an insolvent corporation must be held and treated as a fund in trust for the equal benefit of all of its creditors, or that it must be distributed *pari passu.* The leading case in which the language referred to was used is said to be *Wood* v. *Dummer*, 3 Mason 308, Fed. Cas. No. 17,944, where Mr. Justice Story stated it in these words: "The charters of our bank make the capital stock a trust fund for the payment of all the debts of the corporation. The bill holders and other creditors have the first claims upon it, and the stockholders have no rights until all the other creditors are satisfied." Other eminent jurists have occasionally used similar language, but this does not necessarily import that the assets of a corporation constitute a trust fund which requires distribution equally and ratably among the creditors. From the general character of the language, it is apprehended that it might be satisfied by an appropriation of all the assets to certain just and honest claims, even though others equally meritorious would remain unprovided for. On principle, this doctrine ought to apply with equal force to an insolvent partnership or an individual; for, strictly speaking, a corporation holds its assets in trust for its creditors in no other sense than does a partnership or an individual debtor. If either one of them undertakes to defraud creditors, by withdrawing its or his assets from their reach, the law affords a proper remedy to frustrate such dishonest purpose. In any such case, however, each creditor is at liberty, by superior diligence, to receive payment in full for

15 UTAH—9

his claim, or to create a lien in his favor to the extent thereof, regardless of whether there will be any assets remaining to satisfy the claims of other creditors; and this can only be so because no direct trust or specific lien previously existed in favor of either him or them, for, if a direct trust existed immediately upon insolvency, which burdened the assets with a lien in favor of all the creditors alike, then legal proceedings to create the same would be useless. Doubtless, the assets of a corporation constitute, in a certain sense, a trust fund for the payment of its debts, in the sense that they cannot be appropriated for any purpose foreign to its legitimate business, or distributed among its officers or stockholders, until all its debts are paid. This implies that creditors have an equitable right which may be enforced, when the assets have been taken into possession by a court of equity in a proper proceeding, at the instance of a proper party. Until such proceeding it is difficult to see how the assets can be burdened with a specific lien or direct trust, except in case of a valid judgment or record lien created by the parties. And such is, substantially, the limitation which the "trust-fund doctrine" has received by the supreme court of the United States. In *Fogg* v. *Blair*, 133. U. S. 534, Mr. Justice Field, speaking for the court, says: "We do not question the general doctrine, invoked by the appellant, that the property of a railroad company is a trust fund for the payment of its debts, but do not perceive any place for its application here. That doctrine only means that the property must first be appropriated to the payment of the debts of the company before any portion of it can be distributed to the stockholders. It does not mean that the property is so affected by the indebtedness of the company that it cannot be sold, transferred, or mortgaged to

*bona fide* purchasers for a valuable consideration, except subject to the liability of being appropriated to pay that indebtedness. Such a doctrine has no existence. The cases of *Curran* v. *State of Arkansas*, 15 How. 304, 307, and *Wood* v. *Dummer*, 3 Mason 308, Fed. Cas. No. 17,944, give no countenance to anything of the kind." So, in *Hollins* v. *Iron Co.*, 150 U. S. 371, Mr. Justice Brewer, delivering the opinion of the court, after discussing the trust-fund theory as applied to corporations, said: "The same idea of equitable lien and trust exists to some extent in the case of partnership property. Whenever, a partnership becoming insolvent, a court of equity takes possession of its property, it recognizes the fact that, in equity, the partnership creditors have a right to payment out of those funds in preference to individual creditors, as well as superior to any claims of the partners themselves; and the partnership property is therefore sometimes said, not inaptly, to be held in trust for the partnership creditors, or that they have an equitable lien on such property. Yet all that is meant by such expressions is the existence of an equitable right which will be enforced whenever a court of equity, at the instance of a proper party and in a proper proceeding, has taken possession of the assets. It is never understood that there is a specific lien or a direct trust. A party may deal with a corporation in respect to its property in the same manner as with an individual owner, and with no greater danger of being held to have received into his possession property burdened with a trust or lien." *Hawkins* v. *Glenn*, 131 U. S. 319; *Railway Co.* v. *Ham*, 114 U. S. 594; *Peters* v. *Bain*, 133 U. S. 670; *Graham* v. *Railroad Co.*, 102 U. S. 148; *Richardson's Ex'r* v. *Green*, 133 U. S. 30.

The case of *Purifier Co.* v. *McGroarty*, 136 U. S. 237, cited by counsel for the appellant to sustain its conten-

tion that a corporation has no power to prefer creditors, does not express the views of the supreme court of the United States on that subject. It merely follows the decision of the supreme court of Ohio in *Rouse* v. *Bank*, 46 Ohio St. 493, as to the rights of the creditors of corporations existing and carrying on business within that state. Referring to that case, Mr. Justice Gray, who delivered the opinion of the court, said: "That decision, it is true, proceeded in part upon a theory that the property of an insolvent corporation is a trust fund for its creditors in a wider and more general sense than could be maintained upon general principles of equity jurisprudence." Under the Ohio statutes all assignments, made by a person, partnership, or corporation, in trust to a trustee, in contemplation of insolvency, with the intent to prefer one or more creditors, inured "to the equal benefit of all creditors in proportion to the amount of their respective claims." Rev. St. Ohio 1880, §§ 6335, 6343. Under these statutes the supreme court of the United States held with the supreme court of Ohio. The reasoning of the latter court, while based in part on the constitution and laws of that state, is such, however, as to compel the inference that the decision was fairly made on the doctrine that any preference by an insolvent corporation which has ceased to transact business is unlawful. So, in the case of *Lyons-Thomas Hardware Co.* v. *Perry Stove Manuf'g Co.*, 86 Tex. 145. While, in the decision, considerable reliance was placed upon the statutes of that state, still the argument of the court, which resulted in the denial of the right of giving preference by an insolvent corporation, induces the conviction that such denial would have followed had the statute, which, in the opinion of the court, applied to the case, and strengthened their argument against such preferences,

never existed. Whether or not the reasoning of these cases is sound, they cannot be regarded as of much weight in this state, where the question is not affected by statute. Likewise, in Wisconsin, the statutes are entirely different from ours, and therefore the cases cited from that state are entitled to but little weight in determining the question in this state.

Our attention is also directed to the case of *Robins* v. *Embry*, 1 Smedes & M. Ch. 207. That case was decided by the superior court of chancery of Mississippi in 1843, and the doctrine that an insolvent corporation may prefer creditors was vigorously assailed by Chancellor Buckner, who, in one of the ablest, if not the ablest, opinion which has yet been written against the right to prefer by a corporation, combated the views of Mr. Chief Justice Hosmer in *Catlin* v. *Bank*, above cited, and held it to be deducible from principle, adjudged cases, and legal analogy that the assets of a corporate bank constitute a trust fund primarily for the equal benefit of its creditors, and that it is not competent to defeat the right of equality by an assignment with preferences. The chancellor also held that the rule which permitted an individual debtor to prefer creditors was founded on his absolute dominion over his property, and his unrestricted right of disposition, which, he contended, a corporation did not possess. These views, however, were afterwards overruled, in the case of *Arthur* v. *Bank*, *supra*, by the high court of error and appeals, and the doctrine settled in that state that a corporation may prefer one creditor over another. The Washington cases appear to sustain appellant's contention that an insolvent corporation, even in the absence of statutory provision on the subject, cannot prefer creditors, and that its assets are a trust fund for the equal benefit of its creditors; but they are

so manifestly against the weight of authority that we must decline to follow them. Other cases in other states have denied preferences when made for the benefit of officers or agents of the corporation, to give them, by reason of their positions, an advantage over creditors, and where, by statutory enactment, preferences were prohibited; but such cases cannot be considered as authority in this case, where the assignment was made under no such objection or prohibition. With these cases must be classed that of the *Noble Mercantile Co.* v. *Mt. Pleasant Equitable Co-operative Inst.*, 12 Utah, 213, where the court properly held that the directors of an insolvent corporation, which had abandoned the object for which it was created, could not prefer themselves, by voluntary deed of assignment, over other creditors, whose claims were equally meritorious. While the same question here discussed was there argued by counsel, the court expressly declined to pass upon it, because it was not necessary to a decision in that case. Such cases are not in point here.

Upon careful examination of adjudged cases, as well as upon principle and analogy, and in the absence of insolvent laws and statutory restrictions, we feel ourselves bound to hold that a corporation, in this state, has the same power to prefer creditors, by deed of assignment or otherwise, as a private debtor has, so long as its assets have not been taken into possession by a court of equity, in a proper proceeding, at the instance of a proper party. The rule in the case of a corporation, the same as in that of an individual, is impregnable, except by legislative enactment. This also appears to be in harmony with the English rule, for there the power of a corporation to prefer creditors seems to be fully established, except as restricted by statute. *In re Wincham Ship*

*Building, Boiler & Salt Co.,* 9 Ch. Div. 322; *Willmott* v. *Celluloid Co.,* 34 Ch. Div. 147. While we are not disposed to enlarge the rule as to include cases not strictly within its terms, yet where it is applicable, as in the case at bar, it must regarded and upheld as a law of this state no longer open to question. Whether, if we were free from the authority of judicial decisions, we would entertain different views from those herein expressed, is now a matter of no concern. It is but for us to declare what is law, and, if such law is not in consonance with reason and justice, it is within the power of the legislature to make it so. A court ought not, for light reasons, to assume to declare that not to be the law which has been accepted and treated as the law, by courts as well as the populace, for a long period of time,—not even though such court may feel impelled to inveigh against the rule as not founded in the soundest reason and policy. Especially is this so when such law has become the rule of practice in the business world, and when the business interests of the state have grown up under it.

The contention of the appellant that the assignment dissolved the corporation is not tenable. The law is well settled that a mere transfer of the corporate property of a corporation to a trustee, for the purpose of paying its debts, does not *per se* work a dissolution, and there is nothing in the deed of assignment in this case which would produce such a result. *Manufactory* v. *Langdon,* 24 Pick. 49; *Town* v. *Bank,* 2 Doug. 530; *Bruffett* v. *Railroad Co.,* 25 Ill. 310; *Pyles* v. *Furniture Co.,* (W. Va.) 2 S. E. 909, 921; *Reichwald* v. *Hotel Co.,* 106 Ill. 439; *Buell* v. *Buckingham,* 16 Iowa 284.

We do not deem it necessary to discuss any other question presented in this case. The judgment of the court below is affirmed.

Miner, J., concurs.   Zane, C. J., concurs in the affirmance of the judgment appealed from, but not in all the propositions of law held in the opinion.