## PASSOW & SONS v. WETHERBEE et al.

No. 3047.   Decided August 20, 1917.   (167 Pac. 350.)

1. CORPORATIONS—INSOLVENT CORPORATION—TRUST FUND THEORY—AP-PLICABILITY.  The doctrine that the assets of an insolvent corporation constitute a trust fund in equity for the payment of creditors pro rata and without preference is inapplicable in this state, without statute authorizing its application.[1]   (Page 248.)

2. CORPORATIONS—DEFUNCT CORPORATION—PREFERENCE OF CREDITORS. Where a corporation has forfeited its charter for nonpayment of the annual corporation tax under Laws 1909, c. 106, section 5, relating to forfeiture, and providing that in case of forfeiture all the assets of the defaulting corporation shall be held in trust by the directors, and the same proceedings had as are applicable to insolvent corporations, it may in good faith in winding up its affairs make preferences among its creditors so long as not interfered with in a proper equitable pro-ceeding to subject its property to payment of creditors.  (Page 249.)

3. CORPORATIONS—POWERS OF PRESIDENT—NOTES AND MORTGAGES. Where the president who was also the general manager of the corpora-tion was authorized under its by-laws to transact its general business, his power to execute a note and mortgage and the legality of his acts will not be questioned, especially where he acts in good faith and there is no fraud.[2]   (Page 250.)

4. CORPORATIONS—CREDITORS' SUITS.  The plaintiff could not, without offering to restore the money paid, invoke the aid of equity to have declared illegal the foreclosure of a mortgage of a defunct corpora-tion assigned to a creditor who paid money therefor for the use of

---

[1]*Weyeth H. & M. Co.* v. *James-Spencer-Bateman Co.*, 15 Utah, 110, 47 Pac. 604;  *Colorado Fuel & Iron Co.* v. *Hardware Co.*, 16 Utah, 11, 50 Pac. 628;  *Burnham et al.* v. *McCornick*, 18 Utah, 42, 55 Pac. 77;  *Nat'l Bank* v. *Scott*, 18 Utah, 400, 55 Pac. 374.

[2]*McCarrick* v. *Lenox Mfg. Co.*, — Utah, —, 164 Pac. 478.

the creditors of the corporation, especially where the creditor was an actual loser by the transaction. (Page 250.)

Appeal from District Court, Third District; *Hon. F. C. Loofbourow,* Judge.

Action by Passow & Sons against W. L. Wetherbee and others.

Judgment for plaintiff against defendant named. Defendant appeals.

AFFIRMED with costs.

*Hurd & Hurd* for appellant.

*R. W. Young & Son* and *Harry J. Robinson* for respondents.

CORFMAN, J.

This was an action brought by plaintiff in the district court of Salt Lake county to determine the rights of a creditor of a defunct corporation. The complaint, in substance, alleges the corporate existence of the plaintiff and the defendant Utah State National Bank, hereinafter designated bank; that the defendant W. L. Wetherbee Company, hereinafter called company, was organized as a corporation, but on the 3d day of April, 1911, its charter was forfeited by reason of nonpayment of the annual corporation tax; that thereupon it ceased to have any power or authority to continue business, and that it thereupon became and is still insolvent; that on the 25th day of November, 1913, the plaintiff recovered a judgment against the defendant company for the sum of $669.60 interest and costs; that thereafter, on or about October 3, 1914, an execution was issued on the judgment and the sum of $50 obtained thereon and applied as part payment of the judgment; that the balance of plaintiff's judgment remains unsatisfied; that the defendant W. L. Wetherbee was the general manager and, as such, had sole charge and control of the property and assets of the defendant W. L. Wetherbee Company; that the assets consisted of personal property of various kinds, including a stock in trade; that the defendant W. L.

Wetherbee on October 2, 1912, assumed, without legal authori-
ty, and with the purpose of hindering and delaying creditors,
particularly the plaintiff, to mortgage, substantially, all the
assets of the defendant W. L. Wetherbee Company to the de-
fendant bank, and thereafter, on November 28, 1914, the bank
obtained a judgment and decree of foreclosure of the mort-
gage, the mortgaged property was sold, bought in by the bank
and resold by it to the defendant W. L. Wetherbee, who claims
to be the owner thereof to the exclusion of the plaintiff and
other creditors; that the foreclosure and sale by the bank was
illegal and void, and in fraud of the rights of the plaintiff and
other creditors of the defendant company. Plaintiff prayed for
an accounting of the assets of the defendant company and for
judgment therefor against all the defendants, receivership,
attorneys' fees and costs of suit in behalf of itself and all
other creditors coming in and joining in the action, and for
general relief.

The separate answer of the defendant bank admits its cor-
porate existence and the incorporation of the W. L. Wetherbee
Company, and affirmatively alleges that the mortgage given by
the company was in the exercise of its lawful powers and for
a valuable consideration; that the mortgage was legally fore-
closed, the property purchased by the bank at the foreclosure
sale and subsequently resold to the defendant W. L. Wether-
bee, on a title retaining note; that Wetherbee failed to pay for
the same; that the property was recovered from Wetherbee and
portions thereof resold. The other allegations of the com-
plaint are denied. Plaintiff, in reply, denied all the affirma-
tive allegations of the answer.

Briefly stated, the facts proven at the trial were as follows:
The defendant company was incorporated under the laws of
Utah in January, 1910. Failing to pay the annual corporation
tax its charter was declared forfeited April 3, 1911, pursuant
to statute. The defendant W. L. Wetherbee was its president
and general manager authorized, as such, under its by-laws,
to transact the general business affairs of the company. April
12, 1911, one day after the charter of the company had been
forfeited, a meeting of creditors of the company was held and

it was arranged that the company should go into liquidation. Time for payment of the company debts was extended and a note and chattel mortgage given for $6,000 on all the assets to the Utah Association of Credit Men, as trustee for the creditors. Payments were made by the company to the Utah Association of Credit Men reducing the mortgaged indebtedness to $3,390.70, when the note and mortgage was assigned by the Utah Association of Credit Men to the defendant bank for a consideration of $2,048.28. Subsequently this mortgage was renewed by the company with the bank by the giving of a new note and mortgage, under which foreclosure proceedings were had and the mortgaged property purchased by the bank at foreclosure sale. Thereafter the bank sold the property to the defendant W. L. Wetherbee, on a title retaining note which was not paid, whereupon the property was repossessed by the bank and by it sold to a third party, the bank sustaining some financial loss in the transactions. The indebtedness of the company with the plaintiff was contracted for goods, wares, and merchandise between October 1, and November 30, 1910, for which a judgment was had and obtained against the company in November, 1913. In October, 1914, execution was issued and $50 was recovered by the sheriff of Salt Lake county and applied on the plaintiff's judgment. The evidence also shows that the plaintiff did not take any part in the previous transactions of the company with its creditors, the Utah Association of Credit Men and the bank. Upon trial to the court a money judgment was rendered in plaintiff's favor against the defendant W. L. Wetherbee, as prayed for, and denied as to the defendant bank. Plaintiff appeals.

Numerous errors are assigned. However, counsel for plaintiff, in his brief, presents but one question for determination by this court, and, as said by him:

"The sole question presented upon this appeal is whether or not defendant W. L. Wetherbee Company, after having become insolvent, and after the forfeiture of its franchise, could assign or otherwise convey its property to a single creditor, either for itself or for the benefit of itself and other creditors, to the exclusion of the rights of the plaintiff and the

other creditors to participate in the distribution of the assets of the said involvent and defunct corporation.''

This question presents the effect of Laws Utah 1909, c. 106, section 5, relating to the forfeiture of the charter of such defaulting corporation and winding up the business thereof. After providing in said chapter for the method of the forfeiture of defaulting corporations it is, by section 5 thereof, further provided:

''The Governor, for at least ten days prior to the first Monday in April following [March], shall publish such list in at least two daily papers of general circulation within this state, and shall append to such list and publish therewith his proclamation to the effect that unless the license tax owing by such corporation, together with the penalty and all the costs, shall be paid to the secretary of state on or before noon on the first Monday in April following, such defaulting corporation shall forfeit the amount of the tax and the penalty and costs to the state of Utah, and shall also forfeit its right to carry on business within said state.  *  *  *  In case of forfeiture of the charter and of the right to transact business thereunder, all the property and assets of the defaulting domestic corporations shall be held in trust by the directors of such corporation as in case of insolvent corporations, and the same proceeding may be had with respect thereto as is applicable to insolvent corporations.  Any person interested may institute such proceedings at any time after a forfeiture has been declared as herein provided, but in case the Governor shall reinstate the charter the proceedings shall at once be dismissed and all property restored to the officers of the corporation.  In case the assets are distributed they shall be applied as follows: First, to the payment of the license tax, penalties and costs due to the state; second, to the creditors of the corporation; and, third, any balance remaining shall be distributed among the stockholders in accordance with the amount of stock held by each.''

If we understand the contention of plaintiff, it is that, upon the forfeiture of the company charter for noncompliance with the foregoing statute, all assets of the company thereby under

the statute, were to be held in trust by the directors of the company to be disposed of and the proceeds applied ratably among all the stockholders without preference; and the giving of the chattel mortgage by the company to the Utah Association of Credit Men as trustee for the benefit of certain creditors was a preference to the exclusion of plaintiff and other creditors similarly situated, and therefore absolutely void; and that the bank, through the subsequent assignment of this mortgage, its renewal and the foreclosure proceedings following, acquired no rights to the company property and assets, and for which the bank must account to plaintiff as a creditor of the company in common with all other creditors. In making this contention counsel invokes what is known as the "trust fund" or American doctrine; that the assets of an insolvent corporation—and it is to be noted that under the foregoing statute in case of forfeiture of a charter the property and assets of the defaulting corporation are to be held in trust by the directors as in case of insolvent corporations and the same proceedings may be had as are applicable to insolvent corporations—constitute a trust fund in equity for the payment of all the creditors pro rata and without preference. This contention of counsel, if tenable, must be sustained under the particular statute in question, for the "trust fund" doctrine in this state has been so repeatedly repudiated by the decisions of this court that it may now be regarded as well-settled law that this doctrine will not apply unaided by express statutory enactment authorizing its application. *Weyeth H. & M. Co.* v. *James-Spencer-Bateman Co.,* 15 Utah, 110, 47 Pac. 604; *Colorado Fuel & Iron Co.* v. *Hardware Co.,* 16 Utah 11, 50 Pac. 628; *Burnham et al.* v. *McCornick,* 18 Utah, 42, 55 Pac. 77; *National Bank* v. *Scott,* 18 Utah, 400, 55 Pac. 374. In the case of *Weyeth H. & M. Co.* v. *James-Spencer-Bateman Co.* supra, it is said:

"Upon careful examination of adjudged cases, as well as upon principle and analogy, and in the absence of insolvent laws and statutory restrictions, we feel ourselves bound to hold that a corporation, in this state, has the same power to prefer creditors, by deed of assignment or otherwise, as a private debtor has, so long as its assets have not been taken into possession by a court of equity, in a proper proceeding, at the in-

stance of a proper party. The rule in the case of a corporation, the same as in that of an individual, is impregnable, except by legislative enactment.''

The statute in question reads:

''In case of forfeiture of the charter and of the right to transact business thereunder, all the property and assets of the defaulting domestic corporations shall be held in trust by the directors of such corporations as in case of insolvent corporations, *and the same proceeding may be had with respect thereto as is applicable to insolvent corporations.*'' (Italics ours.)

Clearly no new rule of procedure, as contended for by plaintiff, is, by this statute, expressly prescribed; nor can it be reasonably implied from the language of the statute that the affairs of a forfeiting or insolvent corporation are to be administered by its directors or governing officers in any but the usual and lawful way recognized at the time of its enactment. So, too, it is equally apparent from the reading of the statute that the right of the creditors, at any time after forfeiture, to go into a court of equity and have the corporate assets taken possession of and administered upon impartially for the benefit of all creditors remains unimpaired. To hold, as contended by plaintiff, that when a corporation has forfeitured its charter, or has become insolvent and has ceased to do business, its property and assets constitute a trust fund to be administered by its board of directors, as trustees, for the equal benefit of all of its creditors *without right to make preference by deed or assignment or otherwise* would be to repudiate the repeated former rulings of this court and adopt the ''trust fund'' theory or doctrine, and give the statute invoked by plaintiff a meaning clearly repugnant to its express provision that ''the same proceedings may be had with respect thereto as is applicable to insolvent corporations.''

We are therefore of the opinion that the only fair interpretation which can be placed on the statute in question is, that where a corporation has, under its provisions, forfeited its charter, in the winding up of its affairs and in the disposition of its assets, it may make preference,

by assignment or otherwise, among some of its creditors to the exclusion of others, so long as not interfered with in a proper equitable proceeding for the purpose of subjecting its property and assets to the possession of a court of equity to be administered upon equally and impartially among all of its creditors. It is not contended that it has been shown that the taking of the note and mortgage of the company by the Utah Association of Credit Men was with any fraudulent intent, or otherwise than to apply any and all payments received to the legitimate purpose of paying the debts of the company owing to its creditors. Neither is it contended that the purchase of the note and mortgage in question by the bank and the assignment thereof to it were otherwise than for a good and sufficient consideration and in absolute good faith. The bank then had the right to have renewal of the company obligation to it, and to have the mortgaged property subjected to foreclosure proceedings for the recovery of the amount thus justly due it.

Plaintiff makes some further contention that W. L. Wetherbee, as president of the company, acted without sufficient authority in the execution of the note and mortgage to the Utah Association of Credit Men, and also in making renewal thereof to the defendant bank. While it is true that, ordinarily, the president of a corporation, as such, has no inherent power to execute contracts in general without express authority of its board of directors yet when, as here, the president is also the general manager of the company authorized to act under its by-laws, and has been long accustomed to transact all the corporate business, his power and the legality of his acts may not be questioned, especially when exercised and performed in good faith and in the absence of fraud. *Oakes* v. *C. W. Co.*, 143 N. Y. 430, 38 N. E. 461, 26 L. R. A. 544; *McCarrick* v. *Lenox Min. Co.*, 49 Utah 353, 164 Pac. 478.

There is another reason to be assigned, we think, why the plaintiff in this action is precluded from recovering a judgment against the defendant bank. It is conclusively shown by the record here that the bank, in acquiring the property and assets of the defendant company, acted

in perfect good faith and paid full value for all that it received. The plaintiff in bringing this action invokes the aid of equity without offering to do equity by restoring to the defendant bank the money paid to the Utah Association of Credit Men, as trustee, for the use and benefit of the creditors of the defendant company. This it may not do, especially when, as here, it is shown that the defendant bank reaped no profit, but, to the contrary, was an actual loser in the transaction.

It is ordered that the judgment of the district court be affirmed. Costs to the defendant Utah State National Bank.

FRICK, C. J., and McCARTY, THURMAN, and GIDEON, JJ., concur.