# COMMERCIAL NAT'L BANK OF SALT LAKE CITY et al. v. PAGE & BRINTON et al.

No. 2599. Decided July 21, 1914 (142 Pac. 709).

1. JUDGMENT—RES JUDICATA—IDENTITY OF ACTIONS. Creditors of a contractor agreed to forbear suit in consideration of his agreement that the proceeds of the contract should be paid to a bank and be distributed by a trustee for the creditors. A portion of the proceeds was paid to the bank, and the fund was being distributed under the orders of the contractor, when the trustee sued the bank to recover the fund on the ground that it was being misapplied. The judgment was in favor of the defendant. *Held*, that such judgment was a bar to a subsequent action by the trustee and one of the creditors against the bank and the contractor to recover the same money involved in the former action and for the appointment of a receiver, since the trustee, under Comp. Laws 1907, section 2902, was a trustee of an express trust, and his acts were binding on the creditors, whom he represented. (Page 19.)

2. INJUNCTION—VIOLATION—PARTIAL DISCHARGE OF INJUNCTION. Where, in a suit by creditors against a bank to recover a fund owned by the debtor, and claimed by the creditors under an agreement with the debtor, a decree was rendered restraining the bank from disposing of the fund and appointing a receiver therefor, a subsequent discharge of a portion of the fund from the receivership was in effect a discharge of the injunction *pro tanto*. (Page 22.)

3. EQUITY—HE WHO SEEKS EQUITY MUST DO EQUITY. Where defendant, in possession of a fund belonging to a debtor, and claimed by plaintiff creditors under an agreement of the debtor to distribute the same among plaintiffs, has distributed the fund in substantial compliance with the agreement, he will not be compelled to again account for the fund to plaintiffs, though his disbursement of the fund occurred after the appointment of a receiver and while an injunction restraining him from disposing of the fund was in force against him; the doctrine that he who seeks equity must do equity applying in such case, though the distribution by defendant might not have been in the exact proportions contemplated by the agreement. (Page 24.)

4. FRAUDULENT CONVEYANCES—PREFERRING CREDITORS. In this state an insolvent or failing debtor may prefer a creditor or a class of creditors; the trust fund theory not prevailing.[1] (Page 27.)

[1] *Weyeth H. & M. Co.* v. *James-Spencer-B. Co.*, 15 Utah 111; 47 Pac. 604.

5. FRAUDULENT CONVEYANCES—PREFERRING CREDITORS—EFFECT OF APPOINTMENT OF RECEIVER. The general rule that, after the appointment of a receiver, the debtor ·cannot prefer a creditor is effective only after the receiver has taken possession of the assets, and hence, where the court expressly excludes certain property from the receivership, the debtor may apply such property to the payment of particular creditors. (Page 28.)

Appeal from District Court, Third District; *Hon. C. W. Morse*, Judge.

Suit by Commercial National Bank of Salt Lake City and another against Page & Brinton and the Utah Savings & Trust Company.

Judgment for plaintiffs. Defendant last named appeals.

REVERSED AND REMANDED.

*Richards, Richards and Hamer* and *Ogden Hiles* for appellant.

*Pierce, Critchlow and Barrett* for respondents.

*C. S. Varian, in pro. per.* for receiver.

FRICK, J. ·
This proceeding was commenced July 21, 1909, to recover from the appellant, the Utah Savings & Trust Company, certain moneys which it was alleged were the funds of Page & Brinton, a copartnership, and to which, it was averred, the respondent H. P. Clark, as trustee, was entitled for the use and benefit of his correspondent, the Commercial National Bank of Salt Lake City, a creditor of said Page & Brinton, and for other creditors of said firm. The appointment of a receiver was also prayed for to take possession of the assets of said firm, and the Honorable C. S. Varian was appointed such receiver on August 4, 1909. The action, it seems, continued pending in the district court of Salt Lake County until November 26, 1913, at which time, upon an application there-

tofore duly filed by the receiver, said court found that appellant had wrongfully paid out and disbursed the sum of $4,797.86 of the funds belonging to said firm of Page & Brinton, and to which the receiver, as the successor in interest of said H. P. Clark, trustee, was entitled. The court therefore entered judgment for the said amount against the Utah Savings & Trust Company and in favor of said Varian, as receiver, for the reasons hereinafter stated. The Utah Savings & Trust Company, hereinafter called appellant, alone appeals.

The material facts in substance are as follows: On the ·2nd day of June, 1909, and for several years prior thereto, the firm of Page & Brinton was under contract with the United States Government to construct certain public works in Idaho known as the Boise Payette irrigation project. On the day last named said firm, being indebted to various persons, entered into a certain agreement with and for the benefit of at least a large number of its creditors, as follows:

"We, the undersigned, creditors of H. D. Page, Page & Brinton, and Page Mercantile Company, hereby agree with the said parties, and each with the other, that we will accept settlement of our claims against said debtors upon the following terms and conditions, to-wit: That H. P. Clark shall act as trustee for the parties hereto. That all moneys due Page & Brinton from the Government shall come in care of H. P. Clark, trustee. That all creditors shall share equally in the distribution of all money, after operating expenses in connection with the contract and labor claims have been paid, which said claims shall be paid in full. That the money now due and payable (which should be received within a week) shall be at once distributed. That an additional payment shall be made to creditors not later than August 1, 1908, and the balance upon final settlement with the Government for the contract on Payette-Boise project. And the said creditors further agree that, for and in consideration of the above conditions and payments, they and the said trustee will forbear any action of any nature whatever against said debtors that would interfere with their business operations until the said parties have made final settlement with said Government in

connection with the said contract, whereupon the balance then remaining due said creditors shall be liquidated."

This agreement was signed by twenty-two creditors representing claims amounting to $43,618.54, including the respondent Commercial National Bank, and was also signed by Page & Brinton, as a copartnership. Respondent H. P. Clark accepted the trust, and thus made himself a party to the agreement, in the following words:

"I hereby accept the trust provided for in the foregoing contract and agree to faithfully administer the same according to the terms thereof.                    H. P. CLARK."

Arrangements had also been made by Page & Brinton with the agents of the United States Government that the treasury drafts made payable to said firm from the Government for work done on the project aforesaid should be addressed to the firm in care of appellant. Accordingly, on the 19th day of November, 1908, the firm of Page & Brinton received a Government draft for the sum of $11,300.70, payable to the order of said firm, which draft was, on the day it was received, deposited in the appellant bank to the credit of said firm. Of this deposit, according to the evidence, there remained a balance on February 18, 1909, of $5,047.86. The deposit of said draft and the disbursing of a portion of the proceeds thereof as shown from the balance remaining, as aforesaid, was, by Mr. Clark, the trustee, contended to be contrary to the provisions of the creditors' agreement referred to, and hence, on the 16th day of January, 1909, he, as trustee, for the benefit of the creditors as they appeared in the agreement aforesaid, brought an action against appellant to recover the proceeds of said draft, to-wit, said sum of $11,300.70. That action was tried on the 8th day of July, 1909, and at the trial the fact developed that there was only a balance remaining from said draft amounting to the sum of $5,047.86. The court found in favor of appellant in that action and rendered the following judgment:

"It is ordered  *  *  *  that said complaint and this action  *  *  *  are hereby dismissed, and said defendant

18          SUPREME COURT OF UTAH.          [July

Com. Nat'l Bk., etc., et al. v. Page & Brinton et al., 45 Utah 14.

(appellant) go without day, and that the plaintiff (Clark, trustee) take nothing by this action.''

Thereafter, to wit, on the 21st day of July, 1909, the present proceeding was commenced by respondent Commercial National Bank and H. P. Clark, as trustee, plaintiffs, against Page & Brinton and appellant, as defendants. On the day the proceeding was commenced, the court issued an order directed to the defendants to show cause why a receiver for the firm of Page & Brinton should not be appointed, and pending the hearing thereof also issued a restraining order prohibiting the defendants in said action from cashing any drafts and from paying any money belonging to the firm of Page & Brinton, etc. The order to show cause aforesaid came on for hearing on the 3d, and on the 4th day of August, 1909, the district court appointed the Honorable C. S. Varian receiver to take possession and charge of all the assets of and to collect all moneys due to said firm. The court, however, excepted in said order the $5,047.86 which was the balance of said $11,300.70, as hereinbefore stated, from said receivership, in the following words:

''And the said receiver is directed to hold in his possession and safely keep, to await the further order of the court in this action, any and all moneys or property, real or personal, of said copartnership, saving and excepting, however, any moneys of said copartnership now held by or in the possession of the defendant, Utah Savings & Trust Company, or held by or in the possession of one T. W. Sloan, which said money not exceeding the sum of $5,047.86 is excepted from the operation and effect of this receivership.''

It also appears from the record that prior to July, 1909, said $5,047.86 was, by the direction of Mr. H. D. Page, the managing partner of said firm, placed in the hands of the T. W. Sloan, mentioned in said order, for the purpose of and with the direction to said Sloan to go to Idaho and there make arrangements with the creditors of the firm of Page & Brinton, or with such as would agree to the arrangements, and to purchase from said creditors the claims held by them against said firm growing out of the work contracted for by said firm with the United States Government

at the rate of fifty cents on the dollar. To effectuate the purpose aforesaid, arrangements were made with a bank in Idaho to pay the claims of such creditors as should agree to the proposed arrangement when properly authenticated by said H. D. Page and T. W. Sloan. It seems that the Idaho bank paid the claims as directed, and thereafter drew upon Sloan's account, but such draft was not paid by the appellant until the 2d day of August, 1909, which was about 10 days after the restraining order of July 21st was issued against it. It is, however, not disputed that all of said $5,047.86 was in fact paid out for the use and benefit of said firm of Page & Brinton, but that only $4,684.75 thereof was actually paid to the creditors who were parties to the agreement entered into between said firm and its creditors, and in which Clark was made trustee. The court in effect found that the sum of $250 was paid by appellant out of the $5,047.86 before the restraining order of July 21, 1909, was issued, and that the remainder, for which judgment was entered, to wit, the sum of $4,797.86, was improperly paid for the sole reason that the latter sum was paid out after said restraining order was issued. We remark that the judgment appealed from was entered upon the application of the receiver made and filed in the pending action June 7, 1913, and in which the court was asked to revoke and set aside the order of August 4, 1909, by which the said sum of $5,047.86 was excepted from the receivership, and to award judgment in favor of the receiver for said amount, or rather that the same "be subjected to the receivership." On the 26th day of November, 1913, the district court granted the prayer of the receiver and entered judgment in his favor for the sum hereinbefore stated.

Counsel for appellant have assigned a number of errors which they contend are fatal to the judgment appealed from. The first one argued is that the district court erred in refusing to sustain appellant's plea of former adjudication. Counsel vigorously argue that the judgment entered on July 8, 1909, in favor of appellant, is conclusive of the present controversy because by said judgment it was adjudged that appellant was not required to account for said sum of $5,047.86, which is the identical money now

in controversy, and which is now claimed under the same right and upon the same grounds it was then claimed; that is, Clark, as trustee, who is thé real plaintiff in this action, then claimed the money for the use and benefit of the creditors of the firm of Page & Brinton, and the receiver has merely joined hands with Clark and claims the money for the same purpose. There is abundant evidence in the record which sustains counsel's contentions in that regard and as we have just outlined them. True, respondents contend that the purposes of the present action are not the same as were those of the former action which culminated in the judgment of July 8, 1909. Nominally that may be true. The first action was commenced and prosecuted by H. P. Clark, as trustee, for the benefit of certain creditors of Page & Brinton against appellant, as sole defendant, but that action was based upon the same agreement upon which the present one is based, and the trustee Clark claims in the latter action precisely upon the same grounds upon which he based his claim in the former one. The present proceeding was commenced, however, by H. P. Clark, trustee, and by the Commercial National Bank, who was made a party to it, and who is one of the beneficiaries under the agreement just referred to. What could be gained or adjudicated with the bank as a party that could not have been without it, no one seems to have considered. The bank is merely a nominal party, and thus, in view of all the facts and circumstances of this proceeding, its presence has no legal effect. This conclusion seems the only possible one under our statute, namely, Comp. Laws 1907, section 2902, under which Clark was "a trustee of an express trust," and thus could sue alone without joining with him any of the beneficiaries of such trust. Under the provisions of that section, Clark, although trustee, was nevertheless "the real party in interest" and was thus empowered to bring the action just as was done. In the absence of fraud or collusion, therefore, all the beneficiaries under the agreement sued on were bound by the result of the action. Making the bank a party plaintiff to the present proceeding, in which precisely the same fund is involved, and no other, which was involved in the former proceeding, cannot affect

the question of the right to interpose the plea of former adjudication, so far as parties are concerned. But it is further contended that the parties are changed because the firm of Page & Brinton was not a party to the former proceeding, while it is made so to the present one. While this is true, it is also true that no claim of any kind or character is made in this proceeding against said firm, and no relief was granted as against it. It is not easy to understand why the firm was made a party. Certainly it was not a necessary party. The evidence is all but conclusive that, when this proceeding was commenced, the money here in question had been placed to the credit of Mr. Sloan for the purpose of adjusting the claims of the Idaho creditors; that such adjustments were made; and that all the money was paid to the creditors pursuant to the arrangements made by Mr. Sloan. True, as we have pointed out, the payment was not made to the Idaho bank by appellant until about ten days after the restraining order of July 21, 1909, was issued. How the firm of Page & Brinton, however, did retain any interest in the fund after it was transferred to Sloan and by him paid out for the express purpose for which it was placed to his credit is not easy to perceive. True, the money was actually left in the bank of appellant until it was paid on the draft made by the Idaho bank drawn on Sloan. That fact could, however, not invest the firm of Page & Brinton with title to the fund which had been theretofore set apart as a special fund to pay the Idaho creditors. The firm of Page & Brinton, as we expect to show hereafter, had the legal right to set apart some of its assets or funds for the purpose of preferring some of its creditors over others without becoming guilty of committing a fraud. In view that such was done, we think that, equitably at least, said firm had no interest whatever in the money involved here when this proceeding was commenced, and therefore that firm was merely a nominal party, whose presence cannot affect the legal aspect of the action upon the question of *res judicata*.

Passing now to the issues which it is contended by respondents were different in the present proceeding from what they were in the former one. We have carefully gone over the

complaints filed in both proceedings, and we confess that we can see no essential difference between the two complaints. Precisely the same money is involved, and no other money, in the present proceeding that was involved in the former one. The additional statements that are contained in the complaint in the present proceeding, which were added for the purpose of having a receiver appointed, in no way have changed the essential issues involved in the former proceeding, so far as the appellant and its right to interpose the plea of former adjudication are concerned. The right to recover in the present proceeding is predicated upon the claim that the $5,047.86, for which judgment was claimed against appellant, is a part of the proceeds of the Page & Brinton treasury draft for $11,300.70. That was precisely the claim in the former proceeding, except that the whole $11,300.70 was claimed. Nothing is claimed against the appellant in the present proceeding that was not claimed in the former one. Finally the only difference between the judgment in the former and in the present proceeding is that in the former one the court found and adjudicated that appellant was rightfully in possession of the money, while in the latter it adjudged the contrary. Moreover, in the present proceeding the court's judgment is based entirely upon the finding that appellant had violated the injunction, and for that reason must restore the money. In view, therefore, of the peculiar facts and circumstances of this case, we, with some hesitation, have arrived at the conclusion that the district court erred in not sustaining the plea of former adjudication in favor of appellant.

Assuming, however, that we are wrong in the foregoing conclusion, yet the judgment cannot prevail for another reason. Appellant's counsel insist that although it be assumed that appellant was restrained from paying out any of the money in question here by the order issued July 21, 1909, when this proceeding was commenced, yet that that order was revoked by the order of August 4, 1909, so far as the money in question is concerned. Upon the other hand, respondents contend the order of August 4th continued in effect the restraining order issued July 21, 1909, for the

reason, as they contend, that by the latter order appellant was enjoined from paying out any of the money belonging to the firm of Page & Brinton, and they further insist that, inasmuch as the $5,047.86 was the balance remaining from the $11,300.70 draft, therefore that balance belonged to that firm, and hence appellant was enjoined from paying out any of that balance. In answer to this contention, it is claimed by appellant that this $5,047.86 was expressly excepted from the receivership, and hence was likewise excepted from the injunction, and hence the receiver cannot be entitled thereto. In view of the whole record, there is much force to appellant's contention. As already intimated, the judgment in the present proceeding is based entirely upon the theory that the money for which judgment was entered against appellant was paid out by it after it was restrained from doing so by the order of July 21st. Let it be granted that by the order of July 21st appellant was restrained from paying out any of the $5,047.86, yet, by the order of August 4th, said money was expressly excepted from the receivership. There is much force, therefore, to the contention made by appellant's counsel that in excepting the $5,047.86 from the receivership, as was done by the order of August 4, 1909, such money was released from the restraining order, and hence appellant was not bound to retain it. The mere fact that the court excluded said sum from the receivership is strong, if not conclusive, evidence that it did not regard that money as a part of the assets of the firm of Page & Brinton, and hence that the trustee was not entitled to it or any part of it. If, therefore, appellant is correct in its contention that the money was released from the restraining order of July 21st by the order of August 4th, then the conclusion must follow that, although the money was affected by the former order, yet it was released by the exception contained in the latter one. But in this connection counsel for respondents contend that the district court, in an oral statement made on August 4, 1909, said something from which it was inferable that the court did not intend to except said sum of $5,047.86 from the injunction, although it did except it from the receivership. It is further contended that the court, in entering the order of

24          SUPREME COURT OF UTAH.          [July

Com. Nat'l Bk., etc., et al. v. Page & Brinton et al., 45 Utah 14.

August 4th, did not intend nor did it make a final disposition of the right to the $5,047.86. All this may be true, and yet it in no way affects the question here. The question in this connection is: What were the rights of the parties after the judgment of July 8th was entered, and not in what the court attempted to do on August 4th? Further, what was the effect of what the court did judicially on August 4th, and not what it may have otherwise attempted to do. Judicially the court excepted said money from the receivership in the order we have set out. That order must control. Were it not for the fact that appellant's general manager had recognized and had attempted to obey the restraining order of July 21st, we should be inclined to hold that the contention of appellant's counsel that, so far as the money in question is concerned, although affected by the restraining order of July 21st, it was nevertheless released from that order by the order or judgment of August 4, 1909, although the latter order was made in general terms. For the reason, therefore, that the general manager recognized the restraining order, as he testified he did, we shall assume that it was in force as to him and the appellant, and that the general manager technically violated said order in paying the draft against Sloan, drawn by the Idaho bank, together with some other items of a small amount. We speak of the payments made by appellant as technical violations merely, for the reason that in our judgment the right to control the money in question had passed from Page & Brinton to T. W. Sloan for the purpose before stated, and that it was excepted from the receivership, and hence from the order entered August 4th. While the physical possession of the money remained with appellant, yet, as testified to by the general manager, he felt bound to pay it to the creditors of Page & Brinton pursuant to the arrangement theretofore made with them by Sloan.

According to the testimony of the general manager no money was paid out except such as was due under the arrangement made by Sloan with said creditors, but, so far as appellant is concerned, the money was not transferred from its bank until after the restraining order of July 21st was issued, to-wit, on August 2, 1909. Let it be

assumed, therefore, that the payment of the money in question was enjoined, and that the general manager of appellant violated the injunction by honoring the draft of the Idaho bank for money paid by it to the creditors of the firm of Page & Brinton pursuant to the latter's direction to Sloan, yet it is not disputed, as we have already pointed out, that $4,684.75, or about 92½ per cent. of the $5,047.86, was actually paid to the very creditors that signed the agreement which we have set forth in full in the statement of facts. By the terms of that agreement it was provided that the general creditors of the firm of Page & Brinton could participate in its funds only "after operating expenses in connection with the completion of the contract and labor claims have been paid, which said claims shall be paid in full." The only testimony in the record, with respect to the character of the claims paid by appellant, is that of the general manager of appellant.  Upon that subject he testified:

"These claims are labor claims that are a lien against the bondsmen.  These claims belong to Mr. Sloan when he buys them.  Page & Brinton furnish the money to Sloan.  Page & Brinton would save 50 cents on the dollar.  *  *  *  We are attempting to pay the preferred claims.  The claims for material are preferred claims."

With respect to when the arrangement with the creditors was made, he testified:

"The items which I have given here (that is, the three checks aggregating $250, then a draft for $4,610.60, and then the last draft for $454.13) were paid for the purchase of these claims under the instructions of Page & Brinton. These instructions were given prior to the appointment of the receiver, with reference to all these payments.  The claims were purchased by the Bank of Idaho under our instructions prior to the injunction of the court.  *  *  *  When this check for $4,610 was presented to be paid by the bank, we were obligated to pay it, having undertaken to do so.  Page and Monroe left for Boise to purchase these claims June 30th or July 1, 1909.  This action was commenced on the 21st day of July, 1909."

This testimony is not disputed, except that counsel for respondent contend that it is in a measure contradicted by the fact that, from an inspection of the assigned claims, it does not appear that they were labor claims. That is, however, mere inference, which cannot prevail in the face of the positive statements of the general manager, and especially not since if what he testified to in that regard was inaccurate, the true character of the claims could easily have been shown. The money here involved has therefore actually been devoted to the very purpose to which the receiver by law would be compelled to devote it if he were permitted to enforce the judgment in this case. The mere fact that he would perhaps distribute it in different proportions and among some different creditors cannot affect the question. If it be assumed, therefore, that the payment of the money was made in violation of the restraining order of July 21st, yet such payment did not, in fact or in equity, constitute a diversion of the fund from the purpose for which it was intended. True, counsel for respondent cite authorities to the effect that where a person in violation of a restraining order removes property beyond the jurisdiction of the court, or where he diverts a fund, the court may, and ordinarily will, compel him to restore the fund to the jurisdiction of the court. The foregoing doctrine no doubt is good law and good equity, but it has no application to the facts in this case, and hence should not be enforced. This is an equitable proceeding pure and simple, and, being such, he who demands equity must at least permit equity to be done. If, therefore, it is established, as is the case here, that the fund in question has been devoted to the very purpose for which it was intended, and to which the court would be bound to devote it, we can see no good ground upon which to base a judgment requiring the party, who may have applied the fund to a particular purpose, for which it was intended, to again account for it, although he may have made the application in violation of some rule or order of court. Suppose a trustee were enjoined from paying certain funds to a beneficiary of the trust, but notwithstanding the injunction he paid it to the latter, who had legal capacity to receive and receipt for it,

would any court of equity, upon an application by the receiver to restore the fund, require the trustee to do so, and thus give the beneficiary twice the amount to which he was entitled? We think not. Yet that in effect is just what is attempted here. It is true that it is alleged that the firm of Page & Brinton was insolvent and unable to pay its creditors in full, and therefore it is inferred that the firm was guilty of fraud in attempting to settle with some of its creditors to the exclusion of others. What per cent. of the claims the firm assets were sufficient to pay does not appear. How the creditors of the firm can legally object, however, to appellant's act in paying certain creditors 50 cents on the dollar upon the order of said firm, so long as that was the agreement among the creditors, we cannot well understand. True, there may be creditors not included in the agreement; or it may be that 50 cents on the dollar was too great a percentage to pay, in view of the limited amount of the firm's assets; but, unless legal prejudice exists, no one can complain. But, assuming again that some of the creditors should complain upon the grounds just suggested, yet there is still another reason why they have no legal cause for complaint because appellant paid the money to some of the creditors in preference to others.

In this state any insolvent or failing debtor may prefer a creditor or a class of creditors. The trust fund theory does not prevail in this jurisdiction to the extent that a debtor, though insolvent, may not prefer some of his **4** creditors. In the headnote to the case of *Weyeth H. & M. Co.* v. *James-Spencer-B. Co.*, 15 Utah 111; 47 Pac. 604, the rule is stated thus:

"An insolvent debtor, at common law, may assign a part or the whole of his property for the benefit of his creditors, and may prefer one creditor or class of creditors over others equally meritorious, provided the transaction be bona fide; and this rule is in force in this state, there being no statutory provisions to the contrary."

The firm of Page & Brinton, therefore, had a right to pay some of its creditors in preference to others, and what it had a legal right to do directly it could direct appellant to do

without being guilty of any legal fraud. If this be true, then the receiver of that firm is bound by what that firm did under the sanction of the law. In this proceeding not a dollar is involved that was not paid to some bona fide creditor of the firm of Page & Brinton. In addition to all this, nearly all of the claims that were paid, if not all, were preferred claims under the federal law. If this be so, then again no legal wrong was committed, and the receiver should not prevail.

But it is contended that the right to prefer creditors has no application after a receiver has been appointed. The doctrine upon that question is correctly quoted from 23 A. & E. Ency. L. (2d Ed.) 1043, in respondents' brief as follows:

"After the appointment of a receiver and the taking possession of the property by him, there is a suspension of the right to obtain priority out of the property by voluntary conveyance or by assignment, attachment, or other process. And, after the appointment of a receiver, a creditor within the jurisdiction of the appointing court may be restrained from obtaining a lien upon the property of the debtor, though in another jurisdiction."

As appears from the quotation, however, the suspension of the right to prefer occurs only after the receiver has taken possession of the property and assets of the debtor. In this case the money in question was expressly excepted from the receivership, and that order remained in force for almost four years, and hence the law cited by respondents' counsel can have no application here. The judgment, therefore, from any point of view, cannot stand. The question may, however, be asked, and it is pertinent here, whether a person who is enjoined from doing a certain thing by a court of competent jurisdiction may nevertheless do it with impunity. There can be but one answer to the question, which must be in the negative. We do not hold that it may be done. All that we hold in this case is that, as a matter of practical equity and right, the receiver should not recover a fund which already has been paid to the beneficiaries of the fund. No doubt, if, as assumed by us, the appellant has violated the injunction, it must be held guilty of contempt, and, if it had

been found guilty, could have been punished as the statute prescribes. But if a contempt proceeding had been instituted, and appellant had been found guilty, the penalty under the statute could not have exceeded the sum of $200 or thirty days' imprisonment, if imprisonment were proper. The penalty imposed by the judgment in question, however, is nearly $5,000. Again, under Comp. Laws 1907, section 3368, if the receiver had sought to recover damages in connection with the contempt proceedings, which he might have done, what would have been the measure of his damages in this case? If respondents' contentions are right, such damages would no doubt have been the amount of the judgment. Where, however, as we have pointed out, the fund sued for has been actually paid to those who were legally entitled thereto, how can it be said that the receiver, or any one whom he represents, could legally be damaged at all? We thus demonstrate again that neither in equity nor in good conscience can the receiver defend the judgment in question. By what we have said we have not overlooked the contention of the respondents that the acts of appellant were fraudulent, contumacious, etc. There is not the slightest evidence in the record justifying such a contention. Upon the contrary, the evidence, as well as the inferences to be deduced therefrom, all point to the conclusion that appellant's general manager and those associated with him acted in good faith in disbursing the fund and paid it to those who not only in equity and good conscience, but under the law, were entitled thereto. But if further proof be necessary to establish the fact that the judgment in question is not based upon any inherent equities or rights of the respondents or the receiver to the money in question, it is found in the theory upon which the judgment is based. The judgment is based upon the narrow ground that, inasmuch as the appellant paid out the money awarded by the judgment in violation of the restraining order of July 21, 1909, therefore it should be required to restore the same, regardless of the inherent equities in its favor. That such is the sole basis of the judgment is, we think, conclusively established from the fact that the court entered judgment only for the money that was

in fact paid out after the restraining order of July 21st was issued. Every dollar paid before that date, although paid out of the same fund and for the same purpose, was approved by the court. If appellant had no right, therefore, to pay out the money of the firm of Page & Brinton, it, in the eyes of the law, was legally just as responsible for paying before July 21st as it would have been after that date, except that it was restrained after that date from doing so. The right of recovery, therefore, is rested entirely upon the violation of the restraining order. While, as we have assumed, it may be that appellant has technically offended against the restraining order, yet that offense cannot, under the facts and circumstances here present, alone justify the judgment. That offense, if one was committed, could readily be redressed by contempt proceedings. Such proceedings would be directed against the wrongdoer, and the consequences imposed for the wrongful act would be limited to and be commensurate with the offense, and not, as is the case here, be out of all proportion to it. We have no hesitancy in saying that a court of equity will not lend itself to bring about, nor tolerate, such consequences, if they can be avoided.

For the reasons stated, the judgment is reversed, and the cause remanded to the District Court of Salt Lake County, with directions to set aside its findings of fact and conclusions of law and to make findings and conclusions in accordance with the views herein expressed, and to enter judgment in favor of appellant. Costs on this appeal to be taxed against respondents only and not against the receiver.

McCARTY, C. J., and STRAUP, J., concur.