EDMUND C. CONVERSE, Respondent, v. SEVERYN B. SHARPE and JAMES O. CLARK, as Receivers of the AMERICAN CASUALTY INSURANCE AND SECURITY COMPANY IN THE STATE OF NEW YORK, Appellants, Impleaded with Others, Respondents.

1. CORPORATIONS — LOAN BY DIRECTORS — ASSIGNMENT OF SECURITIES AS COLLATERAL. A transaction whereby directors, in good faith and in the belief that the corporation was solvent, made a loan to it and accepted an assignment of securities from it as collateral, pursuant to a plan to relieve it of its financial difficulties, is not contrary to public policy, and is valid, although the corporation was, in fact, insolvent at the time the loan was made.

2. DIRECTORS — DEALING WITH CORPORATION. When the validity, as against other creditors, of a transaction between a corporation and its directors, depends upon their belief in its solvency, their actual knowledge of its condition, as distinguished from that imputed to them by reason of their relation to it as directors, is of determining importance.

*Converse* v. *Sharpe*, 37 App. Div. 399, affirmed.

(Argued January 9, 1900; decided Febuary 6, 1900.)

APPEAL from a final judgment of the Supreme Court, entered May 18, 1899, after affirmance by the Appellate Division thereof in the first judicial department of an inter-

locutory judgment in favor of plaintiff, entered upon a decision of the court on trial at Special Term.

The plaintiff brought the action for an accounting with respect to certain securities, pledged with him by the company to secure the repayment of loans made to it, aggregating $60,000. He had held the securities as a trustee for himself and for other parties, who had made the loans, and this action is, practically, to obtain a judgment directing him with respect to the distribution of the fund in his hands arising from the proceeds of the securities. The company is a Maryland corporation. In September, 1893, it was stated at a meeting of the board of directors that a portion of its business was unprofitable from large insurance losses and that "unless something were done quickly towards rehabilitating the company, it would be in a very bad condition." A special committee, who had investigated the company's affairs, reported that, "while it was in a very painful condition for lack of immediate funds, it was, nevertheless, sound." It was recommended that there should be a reduction of the capital stock; that there should be a payment of $100,000, or $115,000, into the company, which would tide it over to a good position, and that a prominent man, in good credit in the community, should be placed at its head. Thereafter, the president resigned and General Henry W. Slocum was elected in his place; who accepted office, as he stated, upon the condition that the plan of reorganization should be carried out and the company placed in funds to meet its losses and to retrieve its credit.

On October 9th, there was a conference held by persons interested in the company, as directors or otherwise, and the president stated its financial difficulties and that temporary relief must be given to the company to the extent of $100,000. Thereupon, it was proposed to make a loan to the company, with the understanding that those who loaned the money should be secured, and, upon the promise of General Slocum that they would be secured, the plaintiff and three others, of whom General Slocum was one, and all being directors of the company, agreed to loan, each, the sum of $15,000, and the

moneys, aggregating $60,000, were subsequently loaned upon the company's notes. On October 24th, the board of directors adopted a resolution, authorizing the president and treasurer to assign to the parties loaning moneys to the company, for the protection of its credit, any of the company's securities. Thereafter, there were assigned to the plaintiff various securities, in trust to secure the payment of the four loans ; which were evidenced, as to each lender, by a stock note of the company executed by the president and treasurer. "At the time of the agreement to make said loans and at the time said loans were made, * * * the said Slocum, Converse, Flagler and Graves, and each of them, made said loans and received said securities in the belief that the company was solvent and pecuniarily able to meet its liabilities; that although in financial difficulty and unable then to meet its liabilities and pay its losses as the same became due and payable, that a plan of reorganization which had been undertaken would be perfected and the company put upon a sound financial basis; that the said loans, together with current receipts from the business of the company, would tide over the then financial difficulties, until the company could be fully rehabilitated, and would be able to meet all its liabilities." At the time, the company was, actually, largely insolvent; its capital and surplus had been wholly lost and its liabilities to its policyholders, upon which its indebtedness became finally fixed, exceeded its assets by two millions of dollars and upwards.

The company's notes were not paid at maturity ; the plaintiff sold at public auction a part of the securities and there was realized, and there came into his hands, in all, the sum of about $36,000, which constitutes the fund held by him now, as trustee. In November receivers were appointed of the company, in Maryland and in New York.

These facts are taken from the findings of the trial judge, who held, as a conclusion of law, that the plaintiff and the other parties, who were interested with him in the distribution of the fund, were entitled to share equally in its distribution.

*G. D. B. Hasbrouck, William H. Gibson* and *Eugene Lamb Richards, Jr.,* for appellants. The directors of a corporation are managing agents for its stockholders, and are *quasi* trustees for both the stockholders and creditors. (2 Story's Eq. Juris. § 1252; Morawetz on Priv. Corp. § 516; *Hoyle* v. *P., etc., R. R. Co.,* 54 N. Y. 314; 1 Perry on Trusts, § 207.) The directors of an insolvent corporation are trustees for the creditors of the company and for the stockholders in proportion to their interests therein. (5 Thompson on Corp. §§ 6492, 6503; *Cole* v. *M. I. Co.,* 133 N. Y. 164; *Throop* v. *H. L. Co.,* 125 N. Y. 530; *Howe* v. *S. F. & T. Co.,* 44 Fed. Rep. 233; *Lippincott* v. *S. C. Co.,* 25 Fed. Rep. 577; *Coons* v. *Tome,* 9 Fed. Rep. 532; *Milbank* v. *Welch,* 26 N. Y. Supp. 705; *Lane* v. *Wheelwright,* 69 Hun, 180; *Varnum* v. *Hart,* 119 N. Y. 104; *Vanderpoel* v. *Gorman,* 140 N. Y. 563.) In the case at bar both fraud and violation of the policy of the law of this state are manifest. (L. 1892, ch. 688, § 48; *Sage* v. *Culver,* 147 N. Y. 241; L. 1897, ch. 384, § 60.)

*Edward B. Hill* for Edmund C. Converse et al., respondents. The Appellate Division having unanimously affirmed the decision of the Special Term, the facts are conclusively settled; no question is left for review in this court, and the appeal should be dismissed. (Code Civ. Pro. § 191; *People ex rel.* v. *Barker,* 152 N. Y. 417.) The transaction was not void merely because it was made with directors. (*T. L. O. Co.* v. *Marbury,* 91 U. S. 587; *S. T. Co.* v. *Howe,* 157 U. S. 312; *Smith* v. *Lansing,* 22 N. Y. 520; *Skinner* v. *Smith,* 134 N. Y. 240; *Duncomb* v. *N. Y., H. & N. R. R. Co.,* 88 N. Y. 1; 84 N. Y. 190.) The lenders acted in good faith and the insolvency of the corporation is not material. (*Coats* v. *Donnell,* 94 N. Y. 168; *Vanderpoel* v. *Gorman,* 140 N. Y. 563; *Lane* v. *Wheelwright,* 69 Hun, 180; *McQueen* v. *New,* 10 Misc. Rep. 251; *S. T. Co.* v. *Howe,* 157 U. S. 312.) The officers had authority to make the transfer. (*Castle* v. *Lewis,* 78 N. Y. 131; *Brower* v. *B. T. Co.,* 21 N. Y. Supp.

324; *Duncomb* v. *N. Y., H. & N. R. R. Co.*, 88 N. Y. 1; *Paulding* v. *C. S. Co.*, 94 N. Y. 334.) Even were the transaction voidable, equity requires a return of the money loaned before setting aside such a transfer. (*Smith* v. *Lansing*, 22 N. Y. 520; *Duncomb* v. *N. Y., H. & N. R. R. Co.*, 84 N. Y. 190.) No right to disaffirm is vested in the appellants. (*Atty.-Gen.* v. *G. M. L. Ins. Co.*, 77 N. Y. 272; *Mabon* v. *O. E. Co.*, 24 App. Div. 41; *Dreyfuss* v. *Seale*, 18 Misc. Rep. 551; *Weeks* v. *Cromwell*, 19 Abb. [N. C.] 365; *Buckley* v. *Harrison*, 10 Misc. Rep. 683; *Forker* v. *Brown*, 10 Misc. Rep. 161.)

*John M. Bowers* and *L. G. Reed* for Hugh J. Grant, as receiver, respondent. The decision being based on evidence supporting its conclusions, and having been sustained by the Appellate Division, this court will not go behind the findings of fact. (*La Rue* v. *Smith*, 153 N. Y. 432; *Day* v. *Town of New Lots*, 107 N. Y. 148; *Derham* v. *Lee*, 87 N. Y. 599.) The receivers Sharpe and Clark have no right to assail the pledge of the securities. (Code Civ. Pro. §§ 1810, 1812; *Woerishoefer* v. *N. R. C. Co.*, 6 Civ. Pro. Rep. 113.) Assuming the pledge of the collateral to be criticised on behalf of creditors, it is not a preference affected by the statutes of this state; they do not apply to foreign corporations. (*Coats* v. *Donnell*, 94 N. Y. 168; *Lane* v. *Wheelwright*, 69 Hun, 180; *Catlin* v. *Eagle Bank*, 8 Conn. 505; *Pond* v. *F. R. Co.*, 130 Mass. 94; *Hall* v. *K. El. Co.*, 18 N. Y. Supp. 813; *Worthington Co.* v. *P. B. Co.*, 23 N. Y. Supp. 295.) Directors of a corporation are entitled to the benefit of collateral for moneys actually advanced the company, in good faith, for its necessities, rendering the overplus after paying the advances. (*Kinsman* v. *Fisk*, 83 Hun, 494; *Prentiss* v. *Godchaux*, 66 Fed. Rep. 234; *Gamble* v. *Q. C. W. Co.*, 123 N. Y. 91; *Barr* v. *P. G. Co.*, 57 Fed. Rep. 86; *Duncomb* v. *N. Y., H. & N. R. R. Co.*, 84 N. Y. 190; *Seymour* v. *S. F. C. Assn.*, 144 N. Y. 341; *T. O. Co.* v. *Marbury*, 91 U. S. 587; *S. Mfg. Co.* v. *Hutchinson*, 11 Cir. Ct. App. 320; *Richardson* v.

*Green*, 133 U. S. 30; *I. S. Co.* v. *O'Donnell*, 156 Ill. 624.) The date of the notes and the time of giving them are immaterial. (*People* v. *A. S. B. Ins. Co.*, 3 App. Div. 505.) The agreement of October 9, 1893, to secure the loans, to pledge securities, was valid and good against general creditors, and enforcible. (*R. D. Co.* v. *Rasey*, 142 N. Y. 570; *Deeley* v. *Dwight*, 132 N. Y. 59.) The St. Nicholas Bank is not affected by any of these questions, nor by any notice that its president, as a director of the casualty company, may have had. (*Lohnas* v. *Arkell*, 17 N. Y. Supp. 208; *Bienenstok* v. *Ammidown*, 155 N. Y. 47; *Innerarity* v. *M. Bank*, 139 Mass. 333; *Cave* v. *Cave*, L. R. [15 Ch. Div.] 639; *Matter of European Bank*, L. R. [5 Ch.] 358; *Matter of Marseilles Extension Co.*, L. R. [7 Ch.] 161; *Fulton Bank* v. *N. Y. & S. C. Co.*, 4 Paige, 127; *S. C. Bank* v. *Neass*, 5 Den. 329; *T. Nat. Bank* v. *Harrison*, 10 Fed. Rep. 243.)

Gray, J. The appellants argue that there was error in the findings of the trial court with respect to the circumstances under which these loans were made. The unanimous affirmance by the Appellate Division, however, has conclusively established all the questions of fact in this case. It is not open to us to review the evidence to discover whether the $60,000 were loaned to the company honestly, and upon the faith of the securities pledged; or whether it was, as the appellants claim, in the nature of a subscription to some funding plan. Nor can we review it to discover whether the directors who loaned their moneys had actual knowledge of the insolvency of the company, or not; if that is a material circumstance, as seems further to be claimed. The argument was made for the appellants, as I understand it, that, as these directors were the managing agents of the company, they were chargeable with knowledge of the condition of the company and, therefore, were bound to know its hopelessly insolvent condition; that they had no right by loaning moneys to protract the insolvent condition of the company and to create new and different liabilities, which would enable them to

become creditors and to appropriate the company's assets; and that, as trustees for its creditors and stockholders, upon its insolvency, it was their duty, and it was the policy of the law, to have its affairs promptly wound up. No case is cited in support of the argument that this arrangement, by which persons, who were directors of the company, loaned moneys to it upon the pledge of securities, in order to preserve its credit and to tide over its difficulties, was against public policy and I am unable to agree with it. To the contrary, the adjudged cases support such a transaction between the directors and the company, provided it was fair and in good faith. These elements are established in this case. In *Twin-Lick Oil Company* v. *Marbury* (91 U. S. 587) it was held that there was no rule forbidding a director " from loaning money to the corporation, when the money is needed, and the transaction is open and otherwise free from blame." Such a doctrine, it was said, would deprive the corporation " of the aid of those most interested in giving aid judiciously and best qualified to judge of the necessity of that aid, and of the extent to which it might be safely given." In that case, the loan was by a director of the company when it was in an embarrassed condition and a deed of trust, covering all the corporate property, was given to secure the company's note. Upon default, the property was sold and the defendant bought in the property. It was charged that he had abused his trust relation, to take advantage of the company and to buy in its property at a sacrifice. The bill was filed to have a decree that the defendant held as trustee for the company and for an accounting, etc.; but the decree dismissing it was affirmed. In *Sandford Fork & Tool Co.* v. *Howe, Brown & Co.* (157 U. S. 312), it was observed by Mr. Justice BREWER, that " it is going too far to hold that a corporation may not give a mortgage to its directors, who have loaned their credit to it, to induce a continuance of the loan of that credit, at a time when the corporation, though not in fact possessed of assets equal to its indebtedness, is a going concern, and is intending and expecting to continue in business."

73

In *Duncomb* v. *N. Y., H. & N. R. R. Co.*, (88 N. Y. 1), the president of the company had advanced moneys to it, when embarrassed, to enable it to complete its road, and, subsequently, under a resolution of the executive committee of the board of directors, bonds of the company were pledged with him as security for his claim. It was held that there was no authority for the doctrine that directors cannot transfer property to secure an honest and *bona fide* debt, and the distinction was adverted to that the president had attempted no fraud and had sought no improper or undue advantage in the transaction. I am not aware of any principle of law which would avoid an honest transaction between a director and his company, conducted openly and having as its motive some presumable benefit to the corporation. The fact that it is with a director will impose the necessity of a closer scrutiny and, by reason of his position of trust and agency, his conduct must appear to have been for the company's interest and above-board.

In this case, the directors, who advanced their moneys to aid the company in its crippled condition, did so after a general conference of persons, who were interested in it; in an honest belief and expectation that the company, as a going concern, might be tided over its embarrassments, as it had been represented to be possible by an investigating committee, and without any personal advantage taken. Indeed, it is difficult to see how, and I do not understand it to be claimed, that any benefit could result to them; except so far as, by preserving the company from immediate failure, their interests in the company might be eventually saved. But that was a consideration which was common to all who, as stockholders, were interested in the company, and these four persons, in coming to the relief of the corporation, appear, rather, to have acted disinterestedly. In fact, they were losers in the transaction from the inadequacy of the security. The claim of any neglect of duty on the part of the directors has no real relevancy to this controversy; for, if it existed, any one, able to prove injury therefrom, has an adequate legal remedy.

Nor should the distinction be lost sight of, that the assignment of the directors in pledge to the plaintiff was to secure present loans, agreed to be made upon the faith of the pledge, and that it was, in nowise, to secure the payment of some precontracted debt; which might entail the condemnation of the law, as a transfer of corporate property for the purpose of giving a preference to certain of its creditors. I am quite unable to perceive how any policy of the law of this state is violated by upholding these transactions with the company. "Public policy" is often resorted to as a term to conjure with and its vague use is, not infrequently, relied upon to support claims, which, as in the present case, are not in accord with the common, or moral, sense. Judge Burrough, in *Richardson* v. *Mellish*, (2 Bing. C. P. 229), speaking in reference to the claim that the agreement there was illegal, because against public policy, protested " against arguing too strongly upon public policy; it is a very unruly horse and when once you get astride of it you never know where it will carry you. It may lead you from the sound law."

That the director of a company is chargeable in law with a knowledge of its actual condition may be true; but in adjudging the consequences to follow upon a dealing with the company, in good faith, for its supposed benefit, and without personal advantage taken, the fact of his actual ignorance should have a determining importance. When the nature and quality of his act are to receive their coloring from the facts, the absence of the fact of actual knowledge of the company's insolvency, which might render the transaction an unwise or impolitic one, must be a determining element. In short, the honesty of the intention and the absence of any attempt to oppress, or to overreach, or to gain some undue advantage, should weigh in favor of such a transaction had by a director with his company, in its interest and where he simply sought to secure himself against resulting loss.

It is inconceivable that the plaintiff and his associates should have loaned their moneys to the company, with the knowledge that its condition was one of hopeless insolvency, and the fact

has been found the other way; as it could not well have been otherwise found upon the evidence. For these reasons, as for those which were well expressed by Mr. Justice PATTERSON, at the Appellate Division, the judgment appealed from should be affirmed, with costs.

PARKER, Ch. J., O'BRIEN, BARTLETT, HAIGHT, MARTIN and VANN, JJ., concur.

Judgment affirmed.