CALLAHAN v. PIONEER NURSERIES CO. *ET AL.*

No. 2988.   Decided March 23, 1917.   Rehearing Denied May 5, 1917.
(164 Pac. 878.)

CORPORATIONS—INSOLVENCY—PREFERENCES TO STOCKHOLDER.   Where
both parties act in good faith, execution of a mortgage by an
insolvent corporation to a minority stockholder for money
loaned to and applied by corporation to payment of current
debts, and a subsequent foreclosure by the stockholder, is not
an unlawful preference; the trust fund theory not prevailing.[1]

Appeal from District Court, Third District; Hon. *T. D.
Lewis*, Judge.

Action by J. M. Callahan against the Pioneer Nurseries
Company and another.

Judgment for defendants.   Plaintiff appeals.

AFFIRMED.

*S. P. Armstrong* for appellant.

*Aaron Meyers* and *J. E. Darmer* for respondents.

FRICK, C. J.

The plaintiff brought this action as a creditor of the de-
fendant Pioneer Nurseries Company, hereinafter styled "com-
pany," against said company and against one Sidney Tuttle
as a stockholder and mortgagee of said company.   The plead-
ings are very voluminous, and, in view that there is no ques-
tion raised with respect thereto, we refrain from setting them
forth either in form or substance.   Moreover, in the findings
of the court, to which we shall hereinafter refer, the issues

[1]*Weyeth H. & M. Co.* v. *James-Spencer B. Co.*, 15 Utah 110, 47
Pac. 604; *Burnham, etc., Co.* v. *McCornick*, 18 Utah 42, 55 Pac. 77;
*Wells Fargo & Co.* v. *Scott & Co.*, 18 Utah 127, 55 Pac. 81; *National
Bank of the Republic* v. *Scott & Co.*, 18 Utah 400, 55 Pac. 374; *Kurtz*
v. *Ogden Canyon Sanitarium Co.*, 37 Utah 313, 108 Pac. 14; *Com-
mercial Nat. Bank* v. *Page & Brinton*, 45 Utah 27, 142 Pac. 714.

presented by the pleadings are sufficiently reflected to give a clear understanding of the points decided. The plaintiff alleged in her complaint that said company was insolvent. The relief she prayed for was that a certain decree foreclosing certain mortgages which said company had made and delivered to said Sidney Tuttle, and that the sale of said premises made in pursuance of said decree, all be set aside; that a receiver be appointed to take charge of said mortgaged premises; that plaintiff's claim be allowed and that said receiver be ordered to sell said mortgaged premises and apply the proceeds of the sale to the payment of said company's debts, including the plaintiff's claim. As suggested, there were in fact three several mortgages, but it is not necessary to consider them otherwise than as one entire mortgage, and such will be done hereinafter.

The court, on a preliminary hearing, set aside the foreclosure sale and appointed a receiver to take charge of and to sell the mortgaged premises. The receiver was, however, unable to sell the property, and the court, upon the final hearing of the case, reinstated said sale, discharged the receiver, and denied the plaintiff the relief prayed for. There was also a complaint in intervention, but the same was ultimately dismissed and requires no further attention. The court, on the final hearing, in addition to the findings on some informal matters, in substance, found that, prior to the 5th day of July, 1913, said company was the owner of a certain nursery farm in Salt Lake County of the value of "between $10,000 and $12,000," and that said farm, ever since said 5th day of July, 1913, had been, and at the time of the hearing was, the property of said Sidney Tuttle, subject, however, to a certain mortgage for $4,000 made and delivered by said company to one Hosmer; that said company, at the time of the hearing, was "practically" without assets of any kind; that the plaintiff had recovered a judgment against said company for the sum of $1,248.17, together with $200 attorney's fees, and costs, which is in full force, and that there are no other creditors of said company; that the defendant Sidney Tuttle, at all times mentioned in plaintiff's complaint, was a minority stockholder of said company; that at a certain meeting

of the stockholders of said company held in January, 1912, certain persons, naming them, were elected directors of said company, and that at another stockholders' meeting held in January, 1913, certain other persons, naming them, were elected directors of said company; that "the aforesaid directors and officers were not dummy officers of the said corporation, nor were they under the control or domination of the defendant Sidney Tuttle or of any other stockholder or combination of stockholders; that, while their financial interest in the said corporation was not large, they exercised their individual and independent judgment in the management of its affairs, and performed their duties with due and reasonable diligence, good faith, and fidelity to the interests of the corporation and its stockholders; that the salary of $90 per month to William W. Tuttle for his services as treasurer and general manager was moderate and reasonable; that the directors and manager of said corporation endeavored in good faith to conduct it as a going concern during the year 1912, but they were obliged to and did pay about $4,000 in old debts, and found the salable nursery stock so inferior and depleted, the nursery farm so run down, and the affairs and standing of the corporation so heavily embarrassed, that in the year 1913, their main effort was to close up the business of the corporation, and in the month of August, 1913, the said corporation was practically ended as a going concern; that at various times between January 17, 1912, and February 17, 1913, the defendant Sidney Tuttle loaned to the said Pioneer Nurseries Company, upon his express agreement and understanding with the said company that such loans were to be secured to him by mortgages from time to time upon the aforesaid farm of the said company, the sum of $7,200, which loans were made in good faith to the said company by the said Sidney Tuttle, and were actually received by the said company and in good faith applied to its use and benefit in the payment of its outstanding and current debts, and said loans were secured to the said Sidney Tuttle by note secured by a mortgage duly executed to him by the said company on March 25, 1912, upon the aforesaid farm of the said company in the sum of $2,000 payable in six months with interest

at 10 per cent., and by a second note secured by a mortgage duly executed to him by the said company on June 27, 1912, upon the said farm of the said company, in the sum of $2,000 payable in six months with interest at 10 per cent., and by a third note secured by a mortgage duly executed to him by the said company on February 17, 1913, upon the said farm of the said company, in the sum of $3,200 payable in 30 days with interest at 10 per cent., and at the time when said mortgages were executed the said farm was practically the only asset of the said company by which said loans could have been secured; that the execution of the aforesaid notes and mortgages, or any of them, to the said Sidney Tuttle by the said corporation, Pioneer Nurseries Company, and the subsequent foreclosure of the same, did not constitute an unlawful or fraudulent preference of the said Sidney Tuttle as a creditor of the said corporation, nor were they in fraud of the rights of the plaintiff J. M. Callahan, nor of any other creditor or stockholder; that on June 3, 1913, the said Sidney Tuttle commenced an action in this court to foreclose the aforesaid mortgages, which action was duly and lawfully prosecuted to a conclusion and thereafter on June 11, 1913, a decree was duly entered therein in his favor against the said Pioneer Nurseries Company in the principal sum of $7,200 and $291.53 interest, and $300 attorney's fees, and $11.20 costs, and foreclosing his aforesaid mortgages upon the aforesaid farm of the said company, and thereafter on June 13, 1913, an order of sale duly issued out of this court upon said decree, and thereafter on July 5, 1913, sale of said farm under said decree was duly made by the sheriff of Salt Lake County, at which sale said defendant Sidney Tuttle purchased said farm for the sum of $7,866.13, and the time of redemption of said farm from said sale has long since expired; that the plaintiff J. M. Callahan did not know of said foreclosure suit nor of the sale of said farm thereunder until after said sale was made, but said foreclosure and sale were not surreptitious, nor in any wise out of the due course of law."

The district court made the following conclusions of law:

"The plaintiff J. M. Callahan is not entitled to maintain this action against the defendants, and is not entitled to any

of the relief demanded in her complaint as against the defendants.

"The defendant Pioneer Nurseries Company and the defendant Sidney Tuttle are entitled to a judgment in their favor against the said plaintiff upon all the issues joined in this cause, and to a judgment against the said plaintiff for their costs in this action in the sum of $..............."

Judgment was entered accordingly. The plaintiff appeals from the judgment, and her principal assignments are that the district court erred in finding the facts as before stated and that it also erred in its application of the law to the facts.

The evidence is somewhat voluminous, and nothing could be gained by setting it forth here. It must suffice to say that on some of the issues or features of the case the evidence is in conflict, yet a careful reading of the evidence convinces us, and, as we believe, would convince any disinterested person, that the findings are not only amply supported by the evidence, but, in our judgment, they are in accordance with the great weight of the evidence. Indeed, judging from the record alone, we can conceive of no good reason why the court appointed a receiver, except that it attempted to realize all that it was possible to realize out of the property. Time, however, showed that all had been realized upon the foreclosure sale that could be realized, and therefore the court's action in reinstating the sale could not have prejudiced any one.

Now as to the law: Appellant's counsel in his brief vigorously contends that the so-called trust fund doctrine should control in this case, and that the district court erred in refusing to apply that doctrine thereto. Counsel also insists that this court should now recede from its former holdings upon that subject, as hereinafter indicated, and should adopt the trust fund theory. We herewith give counsel's contention in that regard in his own words. He says:

"Appellant contends: First, that this court should adopt the logical and just rule that the property of an insolvent corporation, as soon as it becomes apparent that it cannot continue its business, becomes a trust fund in the hands of

the directors or stockholders, where they combine to control (*Ervin* v. *O. R. & N. Co.* [C. C.] 27 Fed. 625, 631), for payment of all its general creditors, without preference; second, that, if this court deems itself so fettered by former decisions that it cannot meet the needs of modern commercial development and the concomitant growth of high finance, it should then carefully scrutinize the good faith of Sidney Tuttle in taking the mortgages.''

This court, in a number of cases, has refused to apply the trust fund doctrine to corporations, but has held that a corporation, with certain exceptions stated in the opinions filed in said cases, may prefer one or more of its creditors over others, if the preferred debt be an honest one and the parties in all things have acted in good faith, to the same extent that an individual debtor may prefer his creditors. In *Weyeth H. & M. Co.* v. *James-Spencer-B. Co.*, 15 Utah 110, at page 124, 47 Pac. 604, at page 608, this court, speaking through Mr. Justice Bartch, after a thorough discussion of the doctrine of preference and the so-called trust fund theory, states the law in the following words:

"The doctrine that an insolvent corporation may make an assignment of all its property for the purpose of paying its just debts, and prefer one creditor or class of creditors over others, the same as it might do if it were a natural, instead of an artificial, person, when none of its officers or agents are preferred, must, in the absence of charter and statutory provision to the contrary, be regarded as the settled law of this country, and, like the rule in the case of an individual debtor, has been so thoroughly incorporated in our system of jurisprudence that it cannot be overthrown, except by legislative enactment."

The foregoing case was followed in the case of *Burnham, etc. Co.* v. *McCornick*, 18 Utah 42, 55 Pac. 77, and in the more recent case of *Commercial Nat. Bank* v. *Page & Brinton*, 45 Utah 27, 142 Pac. 714.

· The defendant Sidney Tuttle does not come within the exceptions stated in the foregoing quotations, nor, under the evidence, is there any doubt that Mr. Tuttle's claim was an honest one, and that neither in giving the mortgage by the corporation, nor in receiving it by Mr. Tuttle, was there any intention to hinder or delay any creditor of the company,

much less to defraud any one. The money for which the mortgage was given to Mr. Tuttle was all applied in payment of bona fide debts of the company and was advanced by him on the promise that he should be secured by the giving of a mortgage on the nursery farm and in the hope of maintaining the business of the company and of saving it from insolvency. Moreover, the debts aforesaid were all contracted by the husband of the plaintiff as general manager of the company, and nothing was concealed from her. The evidence is also quite persuasive that, when the money was advanced by Mr. Tuttle and the mortgage was made, both he and the directors of the company believed that there were no other debts, except Mr. Tuttle's claim for the money advanced by him. The evidence leaves little, if any, room for doubt, therefore, that the money was advanced by Mr. Tuttle and that the mortgage was delivered to him in the utmost good faith. The facts of the case at bar, therefore, bring it squarely within the rule announced in the case of *Wells Fargo & Co.* v. *Scott & Co.*, 18 Utah 127, 55 Pac. 81; *National Bank of the Republic* v. *Scott & Co.*, 18 Utah 400, 55 Pac. 374, and in the more recent case of *Kurtz* v. *Ogden Canyon Sanitarium Co.*, 37 Utah 313, 108 Pac. 14. In all of those cases preferences of claims were upheld.

In view of the findings of the court, all of which, as we have pointed out, are in accordance with the evidence, and in view of the foregoing decisions of this court, it could subserve no good purpose for us to review the numerous cases cited by appellant's counsel. It is sufficient to say in that regard that counsel's theories and the cases cited by him are all predicated upon actual or constructive fraud. There, however, was neither actual nor constructive fraud in the transactions between the company and Mr. Tuttle, and hence neither counsel's theories nor his cases have any application.

In our opinion both the findings of fact and the judgment are right and should prevail.

The judgment therefore is affirmed, with costs to respondents.

McCARTY and CORFMAN, JJ., concur.