# HUNTINGTON ROLLER MILLS & MFG. CO. v. MILLER.

## No. 3773.   Decided June 6, 1922.   (208 Pac. 531.)

1. CORPORATIONS—LEGALITY OF EXECUTION OF MORTGAGE BY DIRECTORS PRESUMED WHERE. RECORD REGULAR.   Where a corporation signed and sealed a mortgage and delivered it to mortgagee, who took it in good faith, and the records of the corporation showed that the mortgage was duly authorized by the corporation through its directors, the mortgagee or his assignee may act upon it, even though the directors' meeting authorizing the execution and delivery of the mortgage was not regularly called.[1]

2. CORPORATIONS—DEFENSE THAT CORPORATION'S NOTE AND MORTGAGE WERE NOT DULY AUTHORIZED BY DIRECTORS NOT AVAILABLE AGAINST HOLDER IN DUE COURSE.   Where a corporation executed and delivered to a bank a note and mortgage, from which mortgagor received full consideration, and which were assigned in due course for value and before maturity to a stockholder and officer of the bank, held that under Comp. Laws Utah 1917, §§ 4086, 4090, the holder did not take the mortgage subject to any defenses that the corporation or stockholder might have against the original payee, on the ground that the execution of the note and mortgage was not authorized by directors at a regularly called meeting.

3. CORPORATIONS—CANNOT SET UP ULTRA VIRES TO DEFEAT INDEBTEDNESS FOR MONEY ACTUALLY RECEIVED WITHOUT FRAUD.   Where a corporation received the full consideration represented by its note and mortgage, and no fraud entered into the transaction, and the indebtedness was incurred in good faith and for legitimate purposes, it could not prevail in a suit by it in equity to cancel the mortgage as being ultra vires, unless it did equity by paying the debt.

Appeal from District Court, Seventh District, Emery County; *Geo. Christensen,* Judge.

---

[1] *Singer* v. *Salt Lake Copper Mfg. Co.,* 17 Utah, 143, 53 Pac. 1024, 70 Am. St. Rep. 773; *Hatch* v. *Lucky Bill Mining Co.,* 25 Utah, 405, 71 Pac. 865; *Cupit* v. *Park City Bank,* 20 Utah, 293, 58 Pac. 839.

Action by the Huntington Roller Mills & Manufacturing Company against Mina Miller. From a judgment for defendant, plaintiff appeals.

AFFIRMED.

*Price & Fouts,* of Price, for appellant.

*King & Schulder,* of Salt Lake City, and *L. A. McGee,* of Price, for respondent.

FRICK, J.

The Huntington Roller Mills & Manufacturing Company, a corporation, hereinafter called appellant, commenced this action against the defendant, hereinafter styled respondent, in the district court of Carbon county, Utah, to cancel a certain mortgage upon the ground that the same was authorized by only three of the five directors constituting the board of directors of said corporation without notice being given to the other two directors of such meeting, and for that reason it is alleged said mortgage was executed without authority, and is void, and hence should be canceled. It is further alleged that the same was executed for the benefit of said three directors, and not for the benefit of said corporation; that it was executed to secure payment of a certain promissory note for the sum of $5,000, which was made payable to the Castle Valley Banking Company of Huntington, Utah, and by said bank indorsed and said mortgage assigned to the respondent before due, but with knowledge and notice on her part that the same was executed in the manner and for the purpose aforesaid. It is not necessary to state the allegations of the complaint in detail.

The relief prayed for in the complaint is as follows:

"Wherefore plaintiff prays judgment against the said defendant that she be required to surrender up said mortgage to this plaintiff, and to cancel and discharge the same, and for such other and further relief as this court may deem meet and proper."

Respondent filed an answer, which, after admitting execu-

tion, delivery, and indorsement of said note and the assignment of said mortgage to her, denied all allegations of fraud; alleged that she was an indorsee before maturity without notice of any infirmity in due course and for value, and that said note and mortgage were executed and delivered to said bank for a bona fide indebtedness of appellant and for its sole use and benefit. She also set up a counterclaim, alleging that there remained unpaid upon said note and mortgage the sum of $2,700, with interest, and prayed for judgment for said amount and for attorney's fees, and asked that said mortgage be foreclosed, etc. Appellant filed a reply to the counterclaim, in which it alleged that respondent did not purchase said note and mortgage in good faith, and that she took the same with full knowledge of the facts alleged by appellant, and reiterated its prayer for relief.

Upon a full hearing the court made findings of fact and conclusions of law in favor of respondent. The findings fully cover the issues. They are very long and go into great detail. We can only set forth the substance thereof, which, omitting the matters of inducement and unnecessary detail, is that on April 20, 1917, C. L. Allen, Martha Allen, George M. Miller, W. A. Guyman, and Albert Bryner constituted the board of directors of appellant; that on the day aforesaid a meeting of said board of directors was "duly and regularly held," and at which meeting only the said C. L. Allen, Martha Allen, and George M. Miller were present; that through said directors at said meeting appellant duly "authorized its president and secretary to execute and deliver to the Castle Valley Banking Company, a corporation, its note for the sum of $5,000, and to execute to said bank a mortgage upon all of the property and assets owned by the corporation"; that said note and mortgage were executed for corporate purposes; that the same were valid and were not issued "with any design or purpose to defraud the plaintiff [appellant] corporation or any of its stockholders"; that said note and mortgage were duly assigned to respondent before due, and that she is the "legal owner of the same"; that respondent obtained said note without knowl-

edge of any infirmity, or that the same was authorized by only three of the directors; "that said note and mortgage were given for the purpose of securing a loan of $5,000, and said amount was actually loaned by the said Castle Valley Banking Company to plaintiff [appellant] corporation;" that said mortgage was duly filed for record, and recorded as provided by law.

The court then makes findings upon respondent's counterclaim, finding all of the material facts in her favor. The court also found that after all payments, credits, and set-offs were allowed on said note there remained a balance due and unpaid thereon with interest amounting to $2,421.83, that said note provided for a reasonable attorney's fee, and that a reasonable fee was $242.18. We have omitted all findings that are not deemed material to the questions decided.

The court also found as conclusions of law that respondent was entitled to judgment for said $2,421.83 and for $242.18 attorney's fee together with interest as provided in the note. Judgment was accordingly entered for said amounts, and a decree of foreclosure was entered as prayed, and it was ordered that the mortgaged premises be sold and the proceeds of sale applied in payment of the amounts aforesaid, including interest and costs.

Appellant appeals from the judgment, and in its assignment of errors assails the court's findings, conclusions of law, and judgment.

It will be observed that the only relief sought or prayed for by appellant is the cancellation of the mortgage, which the court found was executed and delivered to secure the payment of the $5,000 note, which note remained untouched so far as any relief sought by the appellant is concerned.

One of the principal errors assigned and argued is that the court erred in its finding that said note and mortgage were duly executed and delivered at the meeting held by the board of directors of appellant, consisting of the three members named in the findings. Counsel for appellant, with much vigor, contend that the preponderance of the evidence is to the effect that the directors' meeting at which the note and

mortgage were authorized was a special or called meeting; that no notice was given to the two directors who were not present at said meeting, and for that reason the meeting held by the three directors was not authorized by law, and hence their act in authorizing the execution and delivery of the note and mortgage in question was invalid and of no force or effect. Counsel, among other cases, cite and rely on *Singer* v. *Salt Lake Copper Mfg. Co.*, 17 Utah, 143, 53 Pac. 1024, 70 Am. St. Rep. 773; *Hatch* v. *Lucky Bill Min. Co.*, 25 Utah, 405, 71 Pac. 865; *Cupit* v. *Park City Bank*, 20 Utah, 293, 58 Pac. 839; *Relley* v. *Campbell*, 134 Cal. 175, 66 Pac. 220; and 3 Cook, Corps. (6th Ed.) § 713a; 7 R. C. L. p. 421, § 491. The foregoing authorities hold that, generally speaking, special or called meetings of a board of directors cannot legally be convened and held without notice to the directors, and that the acts of a quorum of the directors when acting without notice of the meeting with certain exceptions are invalid, and cannot be enforced. The question, therefore, is: Are all persons dealing with corporations required to ascertain at their peril whether a directors' meeting was properly called and legally convened, and whether a quorum was actually present at said meeting?

That question has frequently come before the courts. In 3 Cook, Corps., in the section before referred to, the author, in speaking of the question now under consideration says:

"Difficulty has arisen in determining whether a person taking a mortgage from or executing a contract with a corporation is bound to ascertain whether a quorum of the directors was present at the directors' meeting which authorized the instrument, and whether a majority voted in favor thereof. There are many cases where the mortgages and contracts have been held void by reason of defects in the calling, holding, or voting at the directors' meeting.

"The rule sustained by the great weight of authority, however, is that, where a corporate mortgage or contract is signed and sealed by the corporation and delivered to the proper person, who takes it in good faith, he may act upon it, and is protected even though the directors' meeting was not regularly called or held. A quorum of the directors is presumed to have been present. A quorum is not present in passing upon a matter in which one of the directors is personally interested, where only a bare quorum is present when he is counted."

Moreover, in the case at bar it appears from the bill of exceptions that the minutes of the directors' meeting at which the note and mortgage in question were authorized affirmatively show that the meeting was duly held, and that a quorum was present and voted in the affirmative. If the respondent, therefore, had examined the records kept by the corporation, all that she would have discovered would have been that the note and mortgage were duly authorized by the corporation through its directors. But in addition to that the court found that the respondent was an innocent holder in due course and for full value. Indeed, the evidence is clear that there was a payment made on the note before it matured; that she obtained it in due course before due, and paid the full amount that remained unpaid on the note. The mortgage had been duly recorded, and there was nothing from which any one would suspect, much less conclude, that the note and mortgage were not authorized by the corporation through its directors and executed by it by its president and secretary.

Appellant's counsel, however, insist that the court's finding that respondent is an innocent holder in due course is erroneous. The question, therefore, is: What constitutes a holder in due course?

The Negotiable Instruments Act (Comp. Laws Utah 1917, § 4086) defines a holder in due course thus:

"A holder in due course is a holder who has taken the instrument under the following conditions:

"1. That the instrument is complete and regular upon its face;

"2. That he became the holder of it before it was overdue, and without notice that it had been previously dishonored, if such was the fact;

"3. That he took it in good faith and for value;

"4. That at the time it was negotiated to him he had no notice of any infirmity in the instrument or defect in the title of the person negotiating it."

Section 4090 provides what constitutes notice of infirmity, etc., thus:

"To constitute a notice of an infirmity in the instrument or defect in the title of the person negotiating the same, the person to whom it is negotiated must have had actual knowledge of the

infirmity or defect, or knowledge of such facts that his action in taking the instrument amounted to bad faith."

These sections have frequently been passed upon by the courts. See Brannan's Negotiable Instruments Law (3d Ed.) p. 160 et seq., where the question is somewhat exhaustively considered.

In *People's Bank, etc.,* v. *Reid,* 86 Kan. 245, 120 Pac. 339, in discussing what amounts to notice of infirmity on the part of an indorsee of a negotiable instrument under the negotiable instruments law, the Supreme Court of Kansas, in quoting from another Kansas Case, says:

"* * * The principle is now well established that neither a suspicion of defect of title, knowledge of circumstances which would excite such suspicion in the mind of a prudent man or put him on inquiry nor even gross negligence on the part of the taker will affect his right unless the circumstances or suspicions are so cogent and obvious that to remain passive would amount to bad faith. In other words the question is now one of good or bad faith and not of diligence, or negligence, except so far as the want of caution is material as bearing on the question of good faith, and suspicions or knowledge of facts which fall short of bad faith do not amount to notice."

See, also *Youle* v. *Fosha,* 76 Kan. 20, 90 Pac. 1090, and 7 Cyc. 944, 945.

If the doctrine just stated is applied to the facts of the case at bar there is no escape from the conclusion that the district court was clearly right in holding that the respondent was a holder in due course, and that she did not take the note and mortgage subject to any defenses that the corporation or a stockholder might have had, if any, against the original payee, the Castle Valley Banking Company.

We have had less hesitancy in holding that the facts alleged in the complaint are not available as against the respondent for the reason that the evidence is clearly to the effect that the plaintiff received every dollar of the consideration represented by the note and mortgage, that no fraud entered into the transaction, and that the indebtedness was incurred in good faith and for legitimate purposes. True, respondent was a stockholder and officer of the Castle Valley

Banking Company, and an employé, to wit, the secretary of that institution, when the loan was made and the note and mortgage in question were executed and delivered. She, however, received the note in a legitimate business transaction and for its full value, and without the slightest taint of bad faith on her part. If, therefore, this were a case where the whole transaction were held to have been ultra vires the corporation, we should, nevertheless, be compelled to hold that, in view that plaintiff has had recourse to a court of equity and the evidence clearly shows that it received the full consideration for the note and mortgage, it must do equity, and will not be permitted to evade the payment of the debt either directly or indirectly. That under such circumstances corporations must do equity and pay their just debts is no longer an open question. See 3 Fletcher, Cyc. Corps. §§ 1543-1550.

We do not wish to be understood by anything that we have said or omitted to say that banking establishments may, under all circumstances and with impunity, dispose of their paper to their officers and employés and confer upon the latter the rights of innocent holders in due course, and thus permit them to recover on paper when the bank could not have recovered. Each case must, however, be determined upon the facts as they are made to appear, and where it is made to appear, as in this case, that the holder of the note has acquired it from the bank in good faith and for full value in due course, the holder is entitled to protection under the law.

There are a number of other assignments that are discussed in appellant's brief. In view, however, that the foregoing disposes of the case and requires an affirmance of the judgment, the other assignments are immaterial, and we could subserve no good purpose in discussing them. What has just been said applies to the question of ultra vires raised by appellant's counsel, which needs no discussion further than what we have said with regard to that matter.

It follows, therefore, that the judgment should be, and it accordingly is, affirmed, with costs.

CORFMAN, C. J., and WEBER, GIDEON, and THUR-
MAN, JJ., concur.