## CHENEY v. SAN FRANCISCO MINES, Inc., et al.

No. 6414.   Decided May 8, 1942.   (125 P. 2d 424.)

Rehearing Denied July 3, 1942.

View that corporation may prefer creditor who is director and exception to view, notes 19 A. L. R. 334, 649; 38 A. L. R. 92; 48 A. L. R. 479; 56 A. L. R. 207; 62 A. L. R. 738; See also 13 Am. Jur., 1149; 19 C. J. S. Corporations, secs. 1390, 1391.

C. W. *Wilkins* and *Paul B. Cannon*, both of Salt Lake City, and *Sam Cline*, of Milford, for appellant.

*Harvey H. Cluff* and *Van Cott, Riter & Farnsworth*, all of Salt Lake City, for respondents.

LARSON, Justice.

Action to foreclose a mortgage on mining property. The trial court denied foreclosure, cancelled the mortgage, and dismissed the action. Plaintiff appeals. The action grows out of the following facts: In December, 1937, a Utah corporation was organized under the name of San Francisco Mines, Inc. Hereinafter it will be referred to as the corporation. The capital was $250,000, divided into 5,000,000 shares of the par value of five cents (5¢) per share. All of the stock was subscribed at the time of incorporation— 500,000 shares in cash and the balance of the capital stock being fully paid for by the conveyance of certain mining claims, and the assignment of mining leases on other claims, all in Beaver County, Utah. The capital stock was made non-assessable. The incorporators donated to the treasury of the corporation 2,750,000 shares of stock to be used for development purposes and the purchase of other properties. It was contemplated that sufficient money could be raised for operation purposes through sales of stock from the treasury. Sufficient moneys from that source were not forthcoming and by October, 1938, the corporation owed approximately $6,366.11, which included a judgment against the corporation held by the bank at Richfield and an account due L. A. Wynaught, upon which suit had been commenced in September and an attachment of some of the corporation property made. October 18, 1938, the board of directors unanimously adopted a resolution calling a special stockholders meeting for the purpose of considering amending the articles of incorporation to make the stock assessable. The board also adopted a resolution authorizing a loan "from its larger stockholders, or others," not exceeding $10,000, to be secured by mortgage. On January 3, 1939, some of the notes and the mortgage involved in this action were executed. The sixteen notes, totaling $7,875.21, with mortgage securing the same, were given to plaintiff as trustee for the owners of the notes. On January 16, 1939, the stockholders met and amended the articles to make the

stock assessable and adopted a resolution approving, ratifying and confirming all acts of the board of directors, and ratifying the book of account of the company as of December 31, 1938. These minutes are signed by Hartley G. Dewey, the president of the company, and one of the defendants herein. Assessment number one was levied, postponed, and finally cancelled. Another assessment, number 1-A, was levied and postponed. Dewey then called a special stockholder's meeting. The board of directors was removed; a new board elected, and the assessment cancelled. In August, 1940, this action was commenced for recovery on the notes and foreclosure of the mortgage. Of the $6,366.11 owing general creditors when the mortgage was authorized a sum claimed by plaintiffs to be $286.76, but certainly not exceeding $872.29 remained unpaid. No creditor has appeared in opposition to the foreclosure except Hartley G. Dewey, the holder of four $500 notes secured by the mortgage. He was made a defendant because he refused to have his notes included in the foreclosure. He also owned between 600,000 and 700,000 shares of stock, and owed the corporation $750 on a stock subscription. The only appearing defendants are the corporation and Dewey, who challenge the validity of the mortgage because they assert that the directors were not qualified to vote for the mortgage because they were personally interested; some of the notes represented prior obligations; the giving of the mortgage was to the detriment of other creditors.

It is admitted that $150 included in the notes to Maddison, $100 included in the notes to Whittaker, and $500 in notes held by Dewey, were for advances to the corporation made by directors prior to the authorization of the mortgage. The other sums were for advances after the authorization of the mortgage or due persons not officers or directors of the corporation.

The trial court entered a decree declaring plaintiff's mortgage null and void, and cancelling the same and clearing the property of the lien thereof. Plaintiff appeals.

The trial court held that because some of the directors, participating in the authorization of the mortgage held some of the obligations secured thereby, the mortgage was null and void in toto ab initio, and entered a decree cancelling the mortgage. In this the court was in error. We find no authorities upholding such a judgment under facts similar to those here presented. General statements may be found in the texts and in some cases which seem at first blush to so state the rule, but the facts in the cases upon which the text is based, as well as the rationale in the cases, make it evident that such statements are too broad and the holding in the cases does not sustain the statement in the texts or syllabus. A few cases hold that a mortgage to a director, especially for a prior indebtedness, is void but none we have found voids the mortgages as to other parties secured thereby for money lent the company in good faith. And the cases which void the mortgage as to directors are cases which involve questions of bad faith, a fraud upon the corporation, or the rights of other creditors not secured. Such is the rule that has prevailed in this jurisdiction for many years. *Niles* v. *United States Ozocerite Company*, 38 Utah 367, 113 P. 1038; *Baker* v. *Glenwood Mining Co.*, 82 Utah 100, 21 P. 2d 889; *Huntington Roller Mills, etc.*, v. *Miller*, 60 Utah 236, 208 P. 531. An exhaustive review of the questions is found in *Geisenberger & Friedler* v. *Robert York & Co.*, 5 Cir., 262 F. 739. An annotation in 5 A. L. R. 561, states the rule thus:

"According to the view held by a majority of courts, a corporation, though insolvent, may, where it has possession and control of its property and in the absence of fraud or statutory restriction, prefer a bona fide creditor by a deed of trust on its property, or by a mortgage sale, assignment, or otherwise (7 R. C. L. 755); the corporation has been held entitled thus to prefer a creditor, although the creditor is a shareholder, director, or managing officer of the corporation (7 R. C. L. 758; 10 Cyc. 1252 et seq.) * * * It is apparent that a logical application of this theory sustains the right of an insolvent corporation to secure directors or stockholders for a contemporaneous loan."

*Twin-Lick Oil Co.* v. *Marbury*, 91 U. S. 587, 23 L. Ed. 328, 3 Mor. Min. Rep. 688; *Harts* v. *Brown*, 77 Ill. 226, 4 Mor. Min. Rep. 1; *In re Lake Chelan Land Co.*, 9 Cir., 257 F. 497, 5 A. L. R. 557; *Clay* v. *Towle*, 78 Me. 86, 2 A. 852; *Sanford Fork & Tool Co.* v. *Howe, Brown & Co.*, 157 U. S. 312, 15 S. Ct. 621, 39 L. Ed. 713; 19 C. J. S., Corporations, § 801, p. 186 *Webster* v. *Ypsilanti Canning Co.*, 149 Mich. 489, 113 N. W. 7. See annotation 70 Am. St. Rep. 783; 19 A. L. R. 1087; 38 A. L. R. 101; 62 A. L. R. 748. The authorities supra not only show the court in error in voiding the mortgage in toto, but establish beyond cavil a corporation may secure an obligation to an officer or director the same as any other creditor. Such transaction will be closely scrutinized, but where no element of fraud or bad faith is involved, and there is no complaint of preference as to other creditors, the obligation and security can be enforced against the corporation. See cases supra, also 13 A. J. p. 988; *Converse* v. *Sharp*, 161 N. Y. 571, 56 N. E. 69, 70, from which we quote:

"Thereupon it was proposed to make a loan to the company, with the understanding that those who loaned the money should be secured; and, upon the promise of Gen. Slocum that they would be secured, the plaintiff and three others, of whom Gen. Slocum was one, and all being directors of the company, agreed to loan, each, the sum of $15,000, and the moneys, aggregating $60,000, were subsequently loaned upon the company's notes. On October 24th the board of directors adopted a resolution authorizing the president and treasurer to assign to the parties loaning moneys to the company for the protection of its credit any of the company's securities. Thereafter there were assigned to the plaintiff various securities, in trust to secure the payment of the four loans, which were evidenced, as to each lender, by a stock note of the company, executed by the president and treasurer.

\*　　　\*　　　\*

"To the contrary, the adjudged cases support such a transaction between the directors and the company, provided it was fair and in good faith. These elements are established in this case. In [*Twin Lick*] *Oil Co.* v. *Marbury*, 91 U. S. 587, 23 L. Ed. 328, it was held that there was no rule forbidding a director 'from loaning money to the corporation,

when the money is needed, and the transaction is open and otherwise free from blame.' \* \* \*

"In *Sanford Fork & Tool Co.* v. *Howe, Brown & Co.*, 157 U. S. 312, 15 S. Ct. 621, 39 L. Ed. 713, it was observed by Mr. Justice Brewer that 'it is going too far to hold that a corporation may not give a mortgage to its directors, who have loaned their credit to it, to induce a continuance of the loan of that credit, at a time when the corporation, though not in fact possessed of assets equal to its indebtedness, is a going concern, and is intending and expecting to continue in business.' In *Duncomb* v. [*New York H. & N.*] *Railroad Co.*, 88 N. Y. 1, the president of the company had advanced moneys to it, when embarrased, to enable it to complete its road; and subsequently, under a resolution of the executive committee of the board of directors, bonds of the company were pledged with him as security for his claim. It was held that there was no authority for the doctrine that directors cannot transfer property to secure an honest and bona fide debt, and the distinction was adverted to that the president had attempted no fraud, and had sought no improper or undue advantage in the transaction. I am not aware of any principle of law which would avoid an honest transaction between a director and his company, conducted openly, and having as its motive some presumable benefit to the corporation. The fact that it is with a director will impose the necessity of a closer scrutiny, and, by reason of his position of trust and agency, his conduct must appear to have been for the company's interest, and aboveboard. \* \* \*

"Nor should the distinction be lost sight of that the assignment of the directors in pledge to the plaintiff was to secure present loans, agreed to be made upon the faith of the pledge, and that it was in no wise to secure the payment of some pre-contracted debt, which might entail the condemnation of the law, as a transfer of corporate property for the purpose of giving a preference to certain of its creditors. I am quite unable to perceive how any policy of the law of this state is violated by upholding these transactions with the company."

The Wyoming Court in *Harle-Haas Drug Co.* v. *Rogers Drug Co.*, 19 Wyo. 35, 113 P. 791, 795, Ann. Cas. 1913E, 181, says:

"There is a greater conflict among the authorities upon the question of the right of an insolvent corporation to secure or prefer a creditor who is at the time one of its directors, or a debt which has been indorsed or guaranteed by a director. There can be no doubt that a director may loan money to his corporation, and that, while the latter is solvent, it may give a mortgage to the director to secure the money so loaned, and the fact that the corporation becomes insolvent afterwards will

not impair the validity of such security. *When, however, the corporation has become insolvent, there is a difference of opinion concerning its right to pay or secure a pre-existing debt due a director in preference to debts due others.* There is much respectable authority upholding that right generally in the absence of any element of fraud or bad faith." (Italics added.)

*Illinois Steel* v. *O'Donnell*, 156 Ill. 624, 41 N. E. 185, 31 L. R. A. 265, 47 Am. St. Rep. 245; *Hogsett* v. *Columbia Iron & Steel Co.,* 203 Pa. 148, 52 A. 179.

Generally the cases holding to the contrary are those where the corporation was insolvent when the mortgage was given, and involved a claim of preference over other creditors. That view is well presented and reviewed by the Oregon Court in *Gantenbein* v. *Bowles,* 103 Or. 277, 203 P. 614, and it is there said that the inhibition is based upon insolvency of the corporation and the giving of a preference. It points out that Oregon has adopted the trust fund theory, which theory this court has rejected. *Callahan* v. *Pioneer Nurseries Co.,* 49 Utah 541, 164 P. 878, 19 A. L. R. 1082. It is not necessary to further review the authorities so holding.

We add the comment that under the rules in this jurisdiction the defendants cannot prevail upon the issues as formed. There is no allegation, no claim in the pleadings or in the briefs that the directors acted in bad faith or sought any unfair advantage or that there was any fraud. There is no claim or evidence that the corporation was insolvent or threatened with insolvency, nor is there any finding adverse to plaintiff on any of these matters. There are no creditors objecting or complaining except Dewey, whose claims are secured by the mortgage. It is admitted that the corporation received the consideration represented by the notes and that it was used in the corporation's business. Under such circumstances the corporation cannot avoid the mortgage without returning the consideration received which it has not done or offered to do. *Millard County School Dist.* v. *State Bank,* 80 Utah 170, 14

P. 2d 967; *Huntington R. M. & Mfg. Co.* v. *Miller,* 60 Utah
236, 208 P. 531; *Niles* v. *United States Ozocerite Co.,* 38
Utah 367, 113 P. 1038; *Baker* v. *Glenwood Mining Co.,* 82
Utah 100, 21 P. 2d 889; *Bossert* v. *Geis,* 57 In. App. 384,
107 N. E. 95; 3 Fletcher Cyc. Corp. Sections 1543-1550;
*Federal Mining & Eng. Co.* v. *Pollak,* 59 Nev. 145, 85 P.
2d 1008.

The judgment is reversed and the cause remanded with
directions to set aside the judgment and to enter judgment
for plaintiff and foreclosing the mortgage.

Costs to appellant.

MOFFAT, C. J., and McDONOUGH and PRATT, JJ.,
concur.

WOLFE, Justice (concurring).

I concur.

The court will closely scrutinize any transaction in which
a fiduciary steps from his role as such and seemingly acts
for his own interest. When a corporation is in straits and
he comes to its rescue, he is not acting in his own interest
except insofar as that interest is embraced in the collective
interest of all. Taking security for advancements, under
such conditions, is consonant with a fiduciary relationship.

Also, under the Utah decisions, the corporation may pre-
fer a creditor. That the creditor may be a director does not
affect the principle in respect to preferences, but where
the director prefers himself, it presents far stronger evi-
dence that he has stepped out of his fiduciary capacity. In
this case the voting by a director to secure himself for claims
for past due advances or for services rendered on the gen-
eral credit of the corporation, smacks very highly of an act
inconsistent with a fiduciary relationship but the transac-
tion would not be void, but voidable only. It cannot be voided
by the corporation which voted to give the mortgage when
that action has been ratified by the stockholders. In such

case they have approved and sanctioned the action of their fiduciaries. Other unsecured creditors might move to void it if proper grounds exist. While we have held that the assets of a corporation are not a trust fund for the benefit of creditors so as to prevent preferences, still the director owes a duty to preserve for the benefit of creditors the assets which stand for the debts. In that sense he stands as a fiduciary for creditors. Any failure to do that may be attacked by creditors, especially when the corporation is insolvent. The unsecured creditor may obtain a judgment and pursue the assets by a creditor's bill under proper circumstances. In this case, general creditors not included under the trust deed to the extent of $286.76 have failed to attack the transfer. It is doubtful whether they could ever successfully do so as regards those reasonable advancements or services furnished for legitimate corporate purposes made in good faith if the corporation was in straits even though the directors voted to secure their own advancements. The corporation deprived of its right to void the trust deed as security for past indebtedness by the action of its own directors and stockholders cannot borrow the right of the creditor whose claim was not secured by the trust deed, to take the place of the right which it surrendered by giving the deed with the sanction of the stockholders.

The main opinion states that "no creditor has appeared in opposition to the foreclosure except Hartley G. Dewey," etc. The record does not disclose that any of the creditors included in the $286.76 were served. Consequently there should be no implication that they were bound to appear or forfeit their rights. The creditors, covered by the trust deed, may conclude to see that the creditors not covered are taken care of so as to avoid all future actions on their part. The appellant expresses a willingness in its brief to protect the unsecured creditors if legally possible but is apprehensive of their willingness to participate under the trust deed. Ordinarily creditors do not object to being paid or secured. The appellant and his beneficiaries may risk being so inconsid-

erate as to invite the unsecured creditors to partake of the security even under pain of their having first to exhaust the security. All of the assets of the corporation were apparently transferred to the trustee. Thus the freedom of the unsecured creditors to sue for their claims before exhausting the mortgage security which was so considerately preserved for them by the secured creditor is a very questionable blessing.